**In the Matter of a Member of the Bar
of the Supreme Court of Delaware
James E. HIGGINS.**

Supreme Court of Delaware.

Submitted: Sept. 26, 1989.
Decided: Oct. 16, 1989.

L. Susan Faw, Disciplinary Counsel for the Bd. on Professional Responsibility, Wilmington.

Robert D. Goldberg, Biggs & Battaglia, Wilmington, for James E. Higgins.

Before HORSEY, WALSH and HOLLAND, JJ.

PER CURIAM.

This is a Disciplinary Proceeding. A panel of the Board on Professional Responsibility ("Board") [1] held a hearing involving charges of professional misconduct against the Respondent, James E. Higgins ("Higgins"). Bd.Prof.Resp.R. 9(d). The charges related to Higgins' representation of six separate clients. The Board has issued a final report to this Court ("Report").

The Board found that Higgins had violated various provisions of the Delaware Lawyers' Rules of Professional Conduct. The Board also found that Higgins had not sustained his burden of proof with respect to his affirmative defense of mental incompetency. Bd.Prof.Resp.R. 20(g). Nevertheless, the Board found that Higgins had established mental impairment to such an extent, that it should be considered in mitigation of his conduct. Bd.Prof.Resp.R. 8(c).

1. The Board is an agency of this Court, created under Supreme Court Rule 62. *In re Kennedy,* Del.Supr., 472 A.2d 1317, 1318–19 (1984).

Higgins has not filed any exceptions to the Board's findings. Therefore, the sole issue to be addressed by this Court is the form of discipline which should be imposed. That issue has been briefed and argued. The Court has concluded that, *inter alia,* Higgins should be suspended from its Bar for a period of one year.

I

The Board's findings of fact with respect to the underlying charges of professional misconduct, as set forth in its Report, are in pertinent part, as follows:

CASE NO. 1024–A

(ZYCH)

During the summer of 1985, Mrs. Cecilia T. Zych retained Higgins to file a name change petition for her minor daughter. By letter dated August 20, 1985, Higgins sent Mrs. Zych the name change petition and related papers for her signature. Mrs. Zych promptly signed and returned the papers to Higgins.

From January 1986 until October 1987, Mrs. Zych attempted to contact Higgins at his office by telephone to inquire into the status of her case. Higgins failed to respond to Mrs. Zych's numerous calls.

It was not until Higgins was notified, in October 1987, that Disciplinary Counsel had begun an investigation of Mrs. Zych's complaint, that Higgins proceeded to file and handle to its conclusion the petition for a name change. Therefore, for more than two years after being retained by Mrs. Zych, Higgins failed to file the name change petition and failed to inform Mrs. Zych that he had not filed the petition.

CASE NO. 1024–B

(CASSITY)

By letter dated September 18, 1987, Disciplinary Counsel notified Higgins of a complaint made by his client, Ms. Sharon Cassity, and requested his written response. The Board found that Higgins knowingly failed to respond to Disciplinary Counsel's request.

By letter dated October 8, 1987, Disciplinary Counsel again wrote to Higgins, requesting a response to Ms. Cassity's complaint within five days of his receipt of that letter. The Board found that Higgins again knowingly failed to respond to Disciplinary Counsel's request.

CASE NO. 1024–C

(TAYLOR)

Higgins agreed to represent Mrs. Carrie Taylor in connection with litigation that had been filed in the Delaware Court of Chancery in and for Sussex County. At the time Higgins became involved in the matter, it had been pending for some time. Higgins was the fifth attorney to represent Mrs. Taylor in the case. On March 4, 1985, just prior to Higgins' appearance, an order had been entered dismissing the case for lack of prosecution, pursuant to Chancery Court Rule 41(e).

On April 4, 1985, Higgins filed a Motion to Set Aside Dismissal, which was granted. On February 11, 1986, Higgins filed with the Court of Chancery a status report indicating: "Ready for trial. Application for trial will be filed by James E. Higgins, Esq." By letter dated February 28, 1986, Higgins advised the Court of Chancery that the matter should be "scheduled for trial" any time after May 15, 1986.

By letter dated March 4, 1986, the Court of Chancery directed counsel to submit a pretrial order. Higgins failed to prepare and submit a proposed pretrial order. By letter dated July 30, 1986, Mrs. Taylor demanded that Higgins move the case to trial. Despite the Court of Chancery's direction to submit a pretrial order and his client's request to move the case to trial, Higgins did nothing.

On November 7, 1986, Mrs. Taylor met with Higgins and expressed her dissatisfaction. She informed Higgins that she planned to consult with a Dover attorney. Higgins returned $500.00 to Mrs. Taylor, which he had been holding in escrow to cover anticipated costs associated with the litigation. Higgins also gave Mrs. Taylor her file. Higgins interpreted Mrs. Taylor's comments and conduct at this meeting as a termination of the attorney/client relationship. However, he never filed a motion to

withdraw as her counsel in the Court of Chancery action.

On February 24, 1987, opposing counsel filed a status report with the Court of Chancery requesting that the case be removed from the active calendar because, *inter alia*, "no action [had been] taken for more than one (1) year." Although a copy of this status report was sent to Higgins, he took no action and did not notify Mrs. Taylor. On March 2, 1987, the Court entered an order providing that the action was dismissed pursuant to Chancery Court Rules 41(e) and 40(c) and that the dismissal would be final on April 7, 1987, unless an application was made to set aside the dismissal prior to that date. Although a copy of this order was sent to Higgins, he took no action and did not notify Mrs. Taylor.

### CASE NO. 1024–E
### (MARCHESANI)

Higgins represented Mrs. Josephine Marchesani in connection with a divorce and marital property division. The Family Court directed Higgins to submit a "memorandum indicating the amount he believes Mrs. Marchesani to be entitled to and the reasons therefor." Higgins failed to submit that memorandum.

By letter dated January 12, 1987, Mr. Marchesani's counsel, Lawrence M. Sullivan, Esquire ("Sullivan"), notified the Family Court that Higgins had not filed his memorandum, and Sullivan suggested a proposed property division to the Family Court. Although a copy of Sullivan's letter was sent to Higgins, Higgins still failed to file the required memorandum. By letter dated January 30, 1987, which was sent to both counsel, the Family Court directed Sullivan to prepare an order in accordance with his proposal of January 12, 1987. The Family Court subsequently entered an order, as proposed by Sullivan, on February 5, 1987, directing Mr. Marchesani to pay to Mrs. Marchesani "the sum of $5,561.10 by delivery of such funds to her attorney, James F. Higgins [sic]."

Mrs. Marchesani did not learn of the Family Court's February 5, 1987 order until Friday, March 6, 1987. Higgins did not disclose to her the circumstances which led to the Family Court order, nor did he advise her of when the time to appeal would expire. On March 10, 1987, Higgins received a letter from Mrs. Marchesani directing him to appeal. Higgins did not file the appeal since it would have been untimely. However, Higgins did not inform his client that he had not filed an appeal. Mrs. Marchesani attempted to contact Higgins by telephone on numerous occasions to inquire as to the status of her case. However, Higgins failed to respond to her messages.

On March 10, 1987, Sullivan sent Mr. Marchesani's check in the amount of $5,561.10 to Higgins. Higgins never advised Mrs. Marchesani that he had received Mr. Marchesani's check, in accordance with the Family Court's February 5, order. By letter dated May 6, 1987, Sullivan advised Higgins that the check had not cleared Mr. Marchesani's account and inquired as to whether it had been negotiated. Higgins did not respond.

By letter dated June 25, 1987, Mrs. Marchesani advised Higgins that she had retained new counsel, Barbara D. Crowell, Esquire ("Crowell"). She instructed him to transfer the file to Crowell. Thereafter, Crowell attempted to reach Higgins by telephone on several occasions to discuss the case and to arrange for transfer of the file. Higgins failed to return Crowell's telephone messages.

By letter dated July 24, 1987, Crowell forwarded to Higgins a stipulation for substitution of counsel and asked that he contact her to arrange for the transfer of the Marchesani file. By letter dated August 13, 1987, to Higgins, Crowell acknowledged receipt of the executed stipulation for substitution of counsel, advised him that she had been trying to reach him concerning transfer of the file, and posed several questions regarding the case. Crowell received no response.

On September 2, 1987, Mrs. Marchesani contacted the Office of Disciplinary Counsel concerning Higgins' failure to transfer the file to Crowell. By letter dated September 4, 1987, Disciplinary Counsel notified Higgins of the complaint and request-

ed that he "tend to this matter immediately." No response was received and the file was not transferred.

By letter dated September 14, 1987, Disciplinary Counsel asked that Higgins contact her upon his receipt of the letter to advise her "whether [he] intend[ed] to transfer the file; if so, when, and if not, why not." Higgins did not respond to Disciplinary Counsel and did not transfer the file to Crowell. By letter dated September 28, 1987, Higgins was again requested to contact Disciplinary Counsel upon his receipt of this letter concerning Mrs. Marchesani's complaint and others. The Board found that Higgins knowingly failed to respond to Disciplinary Counsel's request.

### CASE NO. 1024–F
### (MAZZULA)

Vincent J. Mazzula ("Mazzula") retained Higgins to file a motion to reopen a default judgment and quash a levy of sale. The default judgment had been entered against Mr. Mazzula in a Justice of the Peace Court. On May 21, 1987, Higgins filed a Motion to Quash Levy and Vacate Default Judgment. Mr. Mazzula was required to and did post a bond secured by $1,304.00 in cash.

The matter was scheduled for a hearing on July 29, 1987. Notice of the scheduling of the July 29, 1987 hearing was mailed to Higgins. Higgins failed to open the envelope containing the notice of the hearing and thus, failed to appear at, or notify his client of, the hearing.

On or about August 4, 1987, Higgins received a copy of the Court's order dated July 29, 1987 denying Mr. Mazzula's motion to quash the levy and to vacate the default judgment and declaring forfeited the bond posted by Mr. Mazzula in the amount of $1,304.00. Higgins failed to notify his client that the motion had been denied and that the bond had been forfeited.

### CASE NO. 1024–G
### (CUNNINGHAM)

On June 19, 1987, Maureen Brooks and Robert C. Cunningham (the "Cunninghams") entered into a written contract to purchase certain real property located at 1812 Washington Street in Wilmington, Delaware from the Floscott Corporation ("Floscott"). The Cunninghams were referred to Higgins by the listing real estate agent for the property, Gary Johnson of Epps Realty, which had an office on the second floor of 700 Kirkwood Highway, directly above one of Higgins' offices. Higgins had formed a corporation and performed other legal services for Epps Realty ("Epps"). Epps had referred other settlement clients to Higgins before the Cunninghams, although this was Higgins' first referral from the particular Epps agent involved here, Gary Johnson.

As a result of the Epps' referral, the Cunninghams retained Higgins to represent them in connection with their purchase. The sale was contingent upon the Cunninghams' securing a purchase money mortgage from Floscott in the amount of $81,600.00, which contingency was met. Settlement in connection with the Cunninghams' purchase of 1812 Washington Street was conducted by Higgins on July 31, 1987. The Cunninghams were charged $300.00 by Higgins.

Floscott, and its president, C.L. Scott Harrison, were also Higgins' clients. Higgins admitted that he did not advise the Cunninghams of this conflicting representation in writing. Higgins testified that, at settlement, he orally advised the Cunninghams that he also represented the seller/mortgagee. Both of the Cunninghams testified that Higgins never so advised them, and that they learned of Higgins' relationship with the seller/mortgagee only after the settlement, in a conversation with a former tenant of the Washington Street property. The Cunninghams also testified that, had they known prior to settlement of Higgins' relationship with the seller/mortgagee, they would have retained a different lawyer.

The Board found that Higgins did not advise the Cunninghams, either orally or in writing, that they had the absolute right to retain a lawyer of their own choice to represent them throughout the transaction, regardless of the realtor's recommendation.

The Board also found that Higgins failed to advise the Cunninghams, either orally or in writing, that his representation of the seller/mortgagee might be possibly conflicting and might adversely affect the exercise of his professional judgment on behalf of the Cunninghams, should there be a dispute between the parties.

## II

The Board's conclusions of law with respect to the underlying charges of professional misconduct, as set forth in its Report, are as follows:

As a result of the facts alleged in the petition to discipline, as amended, which were admitted by Higgins, the Board found that Higgins failed to act with reasonable diligence and promptness in violation of Rule 1.3 of the Delaware Lawyers' Rules of Professional Conduct ("DLRPC") (three counts); he failed to promptly comply with clients' reasonable requests for information in violation of DLRPC 1.4(a) (two counts); he failed to keep clients reasonably informed in violation of DLRPC 1.4(a) (two counts); he failed to explain a matter to the extent necessary in violation of DLRPC 1.4(b) (one count); he failed to expedite litigation consistent with his clients' interests in violation of DLRPC 3.2 (two counts); he failed to withdraw from litigation when discharged in violation of DLRPC 1.16(a)(3) (one count); he knowingly disobeyed an obligation under the Chancery Court Rules in violation of DLRPC 3.4(c) (one count); he failed to deliver to his client funds to which she was entitled in violation of DLRPC 1.15(b) (one count); he failed to surrender papers and property to which his client was entitled upon termination of representation in violation of DLRPC 1.16(d) (one count); he knowingly failed to respond to Disciplinary Counsel's requests for information in violation of DLRPC 8.1(b) (two counts); he engaged in conduct involving dishonesty, fraud, deceit or misrepresentation in violation of DLRPC 8.4(c) (two counts); and he engaged in conduct prejudicial to the administration of justice in violation of DLRPC 8.4(d) (one count).

In connection with the only disputed matter, involving the residential real estate settlement handled by Higgins, the Board found that Higgins failed to properly disclose to his clients, the Cunninghams, his conflicting interest and that he failed to advise them of their absolute right to an attorney of their own choice, in violation of DLRPC 7.3 and Interpretive Guideline No. 1(a) (one count). The Board also found that Higgins improperly caused the Cunninghams to bear the charge for his legal fees, in violation of DLRPC 7.3 and Interpretive Guideline No. 1(b) (one count).

## III

Higgins raised mental incompetency as an affirmative defense to all of the charges of professional misconduct. Higgins alleged that, during the time when these violations were occurring, he was suffering from anxiety and major depression/single episode and that, as a result of this condition, he suffered from a form of mental paralysis which affected his personal and professional life and prevented him from attending to these matters. In support of his defense of mental incompetency, Higgins testified that, in 1985, he began to experience a succession of problems that caused him to become depressed.[2]

Dr. Pereira–Ogan, Higgins' treating psychiatrist, testified that he diagnosed Higgins as suffering from major depression as well as an anxiety disorder, which conditions began in approximately September 1985. Dr. Pereira–Ogan also testified that Higgins' depression impaired his occupa-

---

**2.** The Board Report reflects that Higgins problems included: loss of $20,000 to a "con man;" problems with a real estate investment; taking on (from an attorney who had suffered a heart attack) a group of cases that were represented to be ready for trial but were not; loss of associate practitioners; loss of an experienced secretary; the hiring of a replacement secretary with extensive personal problems; heart problems, and severe over-work that resulted from trying to maintain a busy practice from multiple office locations. Higgins also testified that, in his depressed condition, he began taking the telephone off the hook while at the office, and ignored telephone messages, deadlines and mail (some of which he did not even open).

tional abilities to function, because of his inability to concentrate and his looking at task as insurmountable. However, in Dr. Pereira–Ogan's opinion, Higgins' condition was never so bad that there would have been basis for appointment of a guardian. Dr. Pereira–Ogan also opined that, even in the depths of his depression, Higgins was never mentally incompetent, but was only mentally impaired. Dr. Pereira–Ogan concluded that Higgins had "vastly improved" in response to depression therapy that Dr. Pereira–Ogan initiated after he began seeing Higgins in September 1987.[3]

Disciplinary Counsel arranged for Higgins to be examined by David E. Raskin, M.D. in March 1988 and again in September 1988, just prior to the Board hearing. In March, Dr. Raskin assessed Higgins' "prognosis [as] not good unless he is treated with both medications for his depression and psychotherapy...." Testing by Dr. Raskins in March 1988 revealed "the presence of continued distress." Dr. Raskin agreed with Dr. Pereira–Ogan "that his inability to function as an attorney was related to his depression." However, in September 1988, Dr. Raskin noted that Higgins had "decreased a number of the stresses in his life by reducing his practice to one office and focusing on real estate." Dr. Raskin's finding in September 1988 were:

Parameters measuring depression such as sleep, appetite, concentration, suicide intent and social withdrawal, are all negative for the presence of depressive disorder.... [Testing] validate[d] the clinical impression, [showing] a marked improvement in his overall psychological function. Levels of distress as well as clinical scales are now within the normal range.

Dr. Raskin recommended "an intensified counselling experience ... to insure the gains which have been documented both clinically and on psychological testing."

After considering all of the evidence presented (including, but not limited to, the facts mentioned above), the Board found that Higgins had not sustained his burden of proving the defense of mental incompetency. However, the Board did find that Higgins' mental condition, although not rendering him mentally incompetent within the meaning of Board Rule 20(g),[4] impaired his ability to practice law, and should be considered as a mitigating factor within the meaning of Board Rule 8(c).

## IV

■ In the proceedings before this Court, no exceptions to the Report of the Board were filed by Higgins. Bd.Prof. Resp.R. Rule 9(e). Nevertheless, we have made a careful and independent review of

---

**3.** More recently however, at the Court's request, Dr. Pereira–Ogan submitted a letter concerning Higgins' mental and emotional state, suggesting that Higgin's improvement has not been consistently sustained. Dr. Pereira–Ogan's letter dated March 27, 1989 states that Higgins was hospitalized from March 7 until March 17 for several problems including "Major Depression, recurrent." Dr. Pereira–Ogan reported that as of the date of his letter in late March 1989, Higgins had "improved significantly" from this apparent relapse.

**4.** Board Rule 20(g) provides as follows:
Mental Incompetency As A Defense To Misconduct
(1) Mental incompetency is a complete defense to conduct of a lawyer which would otherwise warrant disciplinary action:
  a. If such conduct was the result or consequence of mental incompetency, and
  b. If the mental incompetency which was responsible for such conduct has been cured so completely that there is no reasonable ba-

sis to believe there will be a recurrence of the condition.
The burden of proof of this defense, in all its aspects, is upon the respondent.
(2) If the respondent is able to sustain the burden of proof as to his mental incompetency at the time of the conduct of which complaint is made, but is unable to prove recovery to the extent indicated in item b. in subdivision (1) of this paragraph and the Board has reason to believe that such recovery is possible, the Board will recommend to the Court that respondent be suspended until such time as he can prove such recovery; otherwise the Board shall recommend his transfer to disability inactive status.
(3) Any respondent defending on the grounds of mental incompetency shall be suspended immediately until and unless he shall sustain the burden of proof that he has been cured so completely that there is no reasonable basis to believe there will be a recurrence of the condition.

both the factual findings and the conclusions of law that are set forth in the Board's Report. Our scope of review with regard to the Board's factual findings is to determine whether the record contains substantial evidence to support those findings. *In re Lewis,* Del.Supr., 528 A.2d 1192, 1193 (1987); *In re Kennedy,* Del.Supr., 472 A.2d 1317, 1326 (1984); *Matter of Reed,* Del. Supr., 429 A.2d 987, 991 (1981). We review the Board's conclusions of law *de novo. Matter of Berl,* Del.Supr., 540 A.2d 410, 413 (1988). We are satisfied that the record before us clearly supports the findings of fact and the conclusions of law made by the Board in this case. *Matter of Sullivan,* Del.Supr., 530 A.2d 1115, 1117 (1987); *In re Lewis,* Del.Supr., 528 A.2d 1192 (1987); *In re Sanders,* Del.Supr., 498 A.2d 148 (1985); *In re Frabizzio,* Del. Supr., 498 A.2d 1076 (1985); *see also In re Ryan,* Del.Supr., 498 A.2d 515 (1985).

## V

Disciplinary Counsel and Higgins' attorney both agree that Higgins' mental condition should mitigate any sanction which would otherwise be imposed by this Court. Nevertheless, there is a disagreement with respect to the appropriate sanction. Higgins argues that a public reprimand or a period of probation is appropriate. Disciplinary Counsel suggests that a period of suspension is appropriate but, that in consideration of the mitigating circumstance of Higgins' mental condition, it is appropriate to shorten the period of suspension.

■ In a proper case, the attorney's mental condition can be considered as a mitigating factor when discipline is imposed. *Matter of Sullivan,* Del.Supr., 530 A.2d 1115, 1119 n. 5 (1987). *See also, Matter of Carmine,* Del.Supr., 559 A.2d 248 (1989). We find that Higgins has presented such a case. Therefore, his mental condition will be considered in arriving at an appropriate sanction. However, we also find that Disciplinary Counsel's position is well taken.

## VI

■ We have considered the recommendations of Disciplinary Counsel and Higgins' attorney. We have considered the Board's Report. We have considered the fact that Higgins has voluntarily limited his practice of law, his remorse for the damage caused by his misconduct, and his efforts to rehabilitate himself through professional counseling. We have taken into particular consideration Higgins' mental condition at the time of his misconduct. We have also considered the number and nature of Higgins' violations of the Delaware Lawyers' Rules of Professional Conduct.

We conclude that the record established in these proceedings requires, *inter alia,* that Higgins be suspended from the Bar of this Court for a period of one year. Accordingly, IT IS ADJUDGED and ORDERED that James E. Higgins be disciplined as follows:

1. That Higgins be prohibited and suspended from engaging in the practice of law as a member of the Delaware Bar for a period of one year, commencing October 16, 1989, and ending on October 15, 1990.

2. That during such period, Higgins shall not (a) share in any legal fees arising from clients or cases referred by him, during the period of suspension, to any other attorney, or (b) share in any legal fees earned for services by others during such period of suspension.

3. That Higgins shall comply with the provisions of Rule 24 of the Rules of the Board on Professional Responsibility.

4. That Higgins shall arrange with another member of the Delaware Bar to protect the interests of any of his clients during the period of suspension, and shall submit to this Court on or before November 15, 1989, a certificate of compliance with this paragraph, co-signed by the attorney who has undertaken the said assignment.

5. That during such period of suspension, Higgins shall continue counselling with a physician, or another appropriate and qualified health care professional concerning his mental condition, for as long as

such treatment is deemed warranted by the health care provider.

6. That during such period of suspension, Higgins shall make arrangements with Disciplinary Counsel for the Board on Professional Responsibility for the payment of the costs of the proceedings before the Board and to repay the three hundred dollars he received from the Cunninghams. In the event that said costs or fees are not paid prior to October 15, 1990, the suspension shall remain in full force and effect until said costs are paid in full.

7. That this Opinion and Order be disseminated by Disciplinary Counsel in accordance with Rule 3 and Rule 14 of the Rules of the Board on Professional Responsibility.