**In the Matter of a Member of the Bar of the Supreme Court of the State of Delaware: Richard S. McCANN, Respondent.**

No. 122, 1994.

Supreme Court of Delaware.

Submitted: Aug. 15, 1995.
Decided: Nov. 27, 1995.

Victor F. Battaglia (argued), and Francis S. Babiarz, Biggs and Battaglia, Wilmington, for Respondent.

David Curtis Glebe, Chief Disciplinary Counsel, Wilmington, for Office of Disciplinary Counsel.

Before VEASEY, C.J., WALSH and HOLLAND, JJ.

PER CURIAM:

This matter is before the Court for final disciplinary action upon review of the February 3, 1995 Final Report and the March 7, 1995 Supplement to the Final Report (collectively, "the Report") of the Board on Professional Responsibility (the "Board"). The respondent, Richard S. McCann ("McCann" or "Respondent") is a member of the Bar of this Court, having been admitted to practice in 1964. The Board found that McCann violated certain of the Delaware Lawyers' Rules of Professional Conduct (the "DLRPC") and recommended as a sanction a public reprimand plus a two-year period of probation with conditions.

McCann contends that there was no clear and convincing evidence before the Board to support a conclusion of any violation of the DLRPC. In the alternative, McCann contends that, if the Court should affirm the Board's conclusions, the Board's recommended discipline should be approved.

The Office of Disciplinary Counsel (the "ODC") contends that the Board was correct in finding that certain of the DLRPC were violated, but that the Board erroneously failed to find other violations. McCann ar-

**52**

gues that, since the ODC did not "cross-appeal," this Court may not review the decision of the Board not to find those violations. The ODC further contends that the violations found here warrant "a severe public sanction such as suspension or disbarment."

The violations of the DLRPC found by the Board are supported by the evidence and should be sustained on review. Those findings, therefore, are **AFFIRMED.** As to McCann's contention that this Court may not consider the ODC's argument that the Board erroneously refused to find certain other violations, we hold that this Court is not precluded from considering and reversing the Board's refusal to find certain violations in a proper case, even in the absence of a "cross-appeal." We do not find, however, any error in the Board's refusal to find certain violations of the DLRPC which are urged in this Court by the ODC. Accordingly, those findings are **AFFIRMED.**

As to the sanction to be imposed by this Court for the violations found by the Board and sustained herein, this Court may exercise its own judgment and is not bound by or limited to the Board's recommendation. Based on this record, the Court has concluded that a significant suspension is warranted and the sanction recommended by the Board is inadequate and inappropriate. Accordingly, **IT IS THE JUDGMENT OF THIS COURT** that Respondent will be **SUSPENDED** from the practice of law for a period of not less than one year, commencing on January 1, 1996. Reinstatement will be considered upon any application filed by McCann after December 31, 1996, provided he has complied with the conditions for reinstatement imposed herein.

## I. THE FACTS

McCann operates a volume neighborhood law practice handling approximately 2500 legal transactions a year. This consolidated disciplinary proceeding arose out of three separate legal matters handled by McCann in 1990, 1991 and 1992.

### A. Board Case No. 1, 1992—The Monroe Appeal

In the summer of 1991, McCann represented Beatrice Monroe ("Monroe") in an appeal to the Delaware Supreme Court (the "Monroe Appeal"). On August 23, 1991, the Court issued the briefing schedule in the Monroe appeal, notifying McCann that he had until September 23, 1991 to file Monroe's opening brief.

After failing to receive either the Monroe opening brief or any type of written or oral request for an extension, the Assistant Clerk of the Court issued a delinquency notice (the "Notice") to McCann on September 24, 1991, directing him to file the Monroe opening brief within seven days. The Notice also informed McCann that if he did not comply immediately, the Court might resolve the matter against Monroe and take disciplinary action. McCann neither responded to the Notice, nor did he file the opening brief or a request for an extension.

On October 4, 1991, McCann filed a request for an extension of time until October 11, 1991 to file Monroe's opening brief and appendix. The Court granted McCann's request on October 7, 1991. Nevertheless, as of October 15, 1991, McCann still had not filed Monroe's opening brief, and the Assistant Clerk issued a second delinquency notice directing McCann to file Monroe's brief and appendix within seven days. The second Notice, like the first Notice, warned McCann of the possible consequences of failing to file Monroe's brief.

After more than seven days elapsed and McCann still had failed to file Monroe's opening brief, opposing counsel moved to dismiss the Monroe appeal. On October 30, 1991, the Court issued a notice giving McCann twenty days to show cause why the Court should not impose sanctions against him for failing to comply with the Court's previous notices. Upon receipt of this Notice to Show Cause, McCann called the Court, spoke with the Court Clerk, and asked for guidance. McCann testified that, as a result of this conversation, he erroneously believed that he had to file Monroe's brief and answer the Court's Notice to Show Cause by November 24, 1991. On November 21, 1991, the Court granted the motion to dismiss, since McCann

had failed to respond in a timely fashion, and referred the matter to the ODC.

On November 27, 1991, McCann filed a motion to vacate and a request for another extension. On December 12, 1991, the Court struck McCann's motion as a nonconforming paper, and denied his request for lack of good cause. At this point, McCann finally notified Monroe that the Court had dismissed her appeal.

McCann claims that his failure either to submit Monroe's opening brief or respond to the Court's notices stems from a debilitating allergy from which he was suffering and his subsequent response to allergy medication. McCann, however, was not hospitalized during this period and continued to work at his office, handle other cases and claims and answer telephone calls and correspondence.

### B. Board Case 38, 1992—The Bow Estate

McCann represented Mr. Gerald and Mrs. Frances L. Bow on various matters, including the preparation of their wills before they moved from Delaware to Florida in 1982. Mr. Bow died in 1982, and McCann continued to provide legal service and advice to Mrs. Bow without compensation. McCann did this because of his friendship with Mr. and Mrs. Bow. This friendship was so close that Mrs. Bow referred to him as a "nephew" and he referred to her as "aunt," although there was no family relationship.

In 1985, Mrs. Bow obtained Florida counsel to prepare a will, pursuant to which Mrs. Bow left ten percent of her estate to her "friend" McCann. McCann was not aware of this version of Mrs. Bow's will at the time. In 1990, Mrs. Bow contacted McCann to update portions of her will. At Mrs. Bow's request, McCann changed Mrs. Bow's reference to him in her will from "friend" to "nephew" and named himself as Mrs. Bow's personal representative. The ten percent bequest in the 1985 will was continued in the 1990 will. A few months after she executed the will, Mrs. Bow died.

McCann retained Florida counsel and McCann executed a Petition for Administration (the "Petition"). The Petition, which contained a declaration that its contents were certified by McCann as true under penalty of perjury, referred to McCann as Mrs. Bow's "nephew." McCann then was appointed as Mrs. Bow's personal representative. McCann testified that there was later unrelated family litigation over the 1990 will, and questions were raised over McCann's role as personal representative since he was not a nephew. McCann then resigned as Mrs. Bow's personal representative. McCann gained no direct benefit from Mrs. Bow's 1990 will beyond the ten percent bequest which had been in her 1985 will.

### C. Board Case No. 2, 1993—The Yannes Case

In February 1991, Brookside Community, Inc. ("BCI"), a community maintenance corporation located in Newark, Delaware, hired McCann to provide legal services. BCI became disenchanted with McCann's work and, in April 1992, filed a disciplinary complaint against him. The ODC dismissed the complaint in June 1992, and BCI continued to retain McCann.

Another dispute arose in July 1992. At that time BCI asked McCann to file several dues collection cases. McCann attempted to file the cases, but submitted them without signing the *praecipes*, thus mandating their return. McCann then delayed filing the cases, claiming that because of a possible problem concerning the validity of certain deed restrictions, a filing could have subjected BCI to a claim under the Fair Debt Collection Act. Nevertheless, McCann failed to inform BCI of his decision to delay filing.

In November 1992, McCann told BCI that he had filed the dues cases. When BCI contacted the court, however, it learned that the cases had not been filed. BCI then terminated McCann and filed another disciplinary action against him.

### D. Consolidated Board Proceedings

The ODC filed with the Board: (1) a Petition to Discipline in Board Case No. 1, 1992, alleging violations of Rules 1.3, 3.2 and 1.4(a) of the DLRPC; (2) a Petition to Discipline in Board Case No. 38, 1992, alleging violations of DLRPC 1.8(c), 3.3(a)(1), 3.4(b), 4.1(a),

5.5(a) and 8.4(b), (c), (d); and (3) a Petition to Discipline in Board Case No. 2, 1993, alleging violations of DLRPC 1.3, 1.4(a) and 8.4(c).

Although these cases were consolidated and scheduled for a hearing before the Board, McCann and the ODC negotiated a resolution of these cases, whereby McCann offered a conditional admission pursuant to Rule 18 of the Rules of the Board on Professional Responsibility. This Court disapproved of this action, however, finding that a conditional admission was not appropriate, and remanded the proceedings to the Board.[1]

The Board issued the Report, finding McCann in violation of 1.3, 3.2, 1.4(a), 1.8(c), 3.3(a)(1), 3.4(b), 4.1(a), and 8.4(c) and (d). The Board also found that McCann did not violate certain other DLRPC. McCann filed objections to the Report pursuant to Board Rule 9(e).

## II. THE BOARD DID NOT ERR IN FINDING THAT McCANN'S CONDUCT IN BOARD CASE NO. 1, 1992, VIOLATED SEVERAL DLRPC

■ This Court must determine whether the record contains substantial evidence to support the Board's findings. *In re Agostini*, Del.Supr., 632 A.2d 80, 81 (1993). The Court reviews the Board's conclusions of law *de novo*. *In re Barrett*, Del.Supr., 630 A.2d 652, 656 (1993).

The Board found that McCann's handling of Monroe's appeal violated DLRPC 1.3, 1.4(a) and 3.2, which respectively require a lawyer to act with reasonable diligence and promptness, keep clients reasonably informed and make reasonable efforts to expedite litigation. McCann disputes the Board's findings, arguing both that the ODC did not meet its burden of proof and that the facts of this case do not prove a violation of any of these rules.

■ Pursuant to Bd.Prof.Resp.R. 15(c), the ODC must show clear and convincing evidence of a disciplinary violation on the part of McCann. This Court has interpreted this standard as requiring that there be more than a mere preponderance of evidence in the ODC's favor. *See In re Morford*, Del.

Supr., 80 A.2d 429, 432 (1951). The Board did not err in finding that the ODC had met its burden of proof.

■ The record before the Board clearly demonstrated that McCann did not act with the required diligence or promptness when he handled Monroe's appeal. He regularly missed filing deadlines, failed to respond to Court orders, and neglected to inform Monroe of the dismissal of her appeal until several weeks had passed. *See In re Carmine*, Del.Supr., 559 A.2d 248 (1989) (attorney sanctioned for failure to file motions and briefs and failure to inform client of case status).

■ McCann claims, however, that his severe allergies and subsequent overmedication serve as a complete defense, rather than as a mitigating factor, and, thus, excuse his behavior. In support of this theory he cites *In re McBride*, Del.Supr., No. 22, 1989, Holland, J., 571 A.2d 787, 1990 WL 17753 (Jan. 24, 1990) (ORDER), which converted a disciplinary hearing into a proceeding for disability status after a sanctioned attorney was found to have a debilitating brain tumor. If McCann wished to present his allergies and overmedication as a complete defense rather than as a mitigating factor, mental incapacity would have to be shown as required under Bd.Prof.Resp.R. 20(g). This would have placed the burden of proof upon McCann. Since McCann did not mention this rule or its requirements, either in the proceedings before the Board or in this Court, it appears he is not relying upon it.

The Board noted that during the time of McCann's illness, he continued to: (1) visit his office every day; (2) handle legal matters, including other trials, for other clients; and (3) respond to correspondence and telephone communications. Additionally, as McCann noted, he also responded to several, if not all, of the Court's notices and warnings. This negates any inference that McCann was incapacitated. In fact, the assertion of this medical problem as a complete defense borders on the frivolous.

---

1. The Court remanded the case to the Board by a letter dated July 26, 1994 from the Clerk of the

Supreme Court.

■ The Board properly treated McCann's illness as a mitigating factor, and considered it as one of the many factors in determining whether McCann violated disciplinary rules. Such treatment by the Board has been approved by this Court. *See, e.g., In re Tos,* Del.Supr., 576 A.2d 607 (1990) (violation of DLRPC 1.3 and 1.4(a) despite fact that lawyer suffered from illness); *In re Higgins,* Del.Supr., 565 A.2d 901 (1989) (lawyer's mental impairment is mitigating factor, but does not prevent Board from finding that lawyer was not diligent); *In re Rich,* Del. Supr., 559 A.2d 1251 (1989) (lawyer's claim of mental incapacity insufficient to prevent Board from finding lack of diligence and failure to communicate with client).

The Board properly found that the ODC showed, by clear and convincing evidence, that McCann violated three disciplinary rules. The Board found that McCann's reliance upon his allergies and overmedication as a complete defense is misplaced. The Board correctly treated such evidence as mitigating factors.

### III. THE BOARD DID NOT ERR IN FINDING THAT McCANN'S CONDUCT IN BOARD CASE NO. 38, 1992, VIOLATED SEVERAL DLRPC

The Board determined that McCann violated DLRPC 1.8(c), 3.3(a)(1), 3.4(b), 8.4(c) and 8.4(d), which respectively prohibit a lawyer from preparing an instrument pursuant to which he or she will receive a substantial gift, from making false statements to a tribunal, from falsifying evidence, from engaging in dishonest conduct and from engaging in conduct prejudicial to the application of justice. Both McCann and the ODC challenge the Board's findings. McCann claims that the Board should not have found him in violation of DLRPC 3.3(a)(1), 3.4(b), 8.4(c) and 8.4(d). McCann contends that the facts show, at most, only technical oversights rather than substantive rule violations. The ODC contends that the Board was correct in its determination that McCann violated these DLRPC, but that it erred when it failed to find that McCann also violated DLRPC 3.3(a)(4), 4.1(a), 5.5(a) and 8.4(b).

DLRPC 1.8(c) prohibits lawyers from preparing instruments pursuant to which the lawyer receives a substantial benefit. It is undisputed that McCann was not related to Mrs. Bow, yet he prepared the 1990 will through which he received approximately $15,000. McCann contends that Section 1.8(c) does not apply to this situation because Mrs. Bow bequeathed ten percent of her estate to McCann in the 1985 will without his knowledge or involvement, and that the revisions he made in 1990 did not deal with this bequest.

■ McCann is correct in that he did not actually draft the section of Mrs. Bow's 1985 will that dealt with the ten percent bequest, but his conduct nevertheless falls under DLRPC 1.8(c). The will specifically stated that it revoked and annulled all previous wills. Thus, the 1990 will became a new will. McCann should have been alerted by this language and the ten percent bequest that it was imperative for Mrs. Bow to obtain independent counsel to handle this matter. *See ABA/BNA Lawyers' Manual on Professional Conduct* 51:604 (1994).

Further, Mrs. Bow's intent to leave McCann ten percent of her estate does not excuse his conduct. DLRPC 1.8(c) does not provide an exemption in such situations; indeed, such an exemption could lead to severe abuse. The facts clearly show that McCann violated DLRPC 1.8(c) in preparing her 1990 will when he did not steer Mrs. Bow toward another lawyer upon noticing her bequest to him in the 1985 will.

■ DLRPC 3.3(a)(1), 3.4(b) and 8.4(c) prohibit lawyers from making false statements, falsifying evidence, or engaging in dishonest conduct. The Board found that McCann violated these rules when he identified himself as Mrs. Bow's "nephew" and submitted falsified evidence to the tribunal in the form of the Petition that identified him as such.

McCann admits that he knew that the references to him as Mrs. Bow's nephew in both the will and the Petition were false, but contends that he did not realize the importance or implication of this falsity and, therefore, did not knowingly make these misrepre-

sentations. McCann's claim is unpersuasive. He has been practicing law since 1964. He cannot be heard to claim that he did not understand the importance of this clear misrepresentation. In view of McCann's experience and his admission that he knew that these representations were incorrect, the Board did not err when it found that McCann violated DLRPC 3.3(a)(1), 3.4(b) and 8.4(c). *See In re Clyne*, Del.Supr., 581 A.2d 1118 (1990) (lawyer's misrepresentations to court led to finding of misconduct).

■ DLRPC 8.4(d) prohibits lawyers from engaging in conduct prejudicial to the administration of justice. In this case, McCann caused falsified documents to be filed in a Florida court. Although he later resigned as administrator when questioned, his conduct was *per se* prejudicial to the administration of justice and a waste of the court's and the parties' time and money. The Board correctly found that such conduct harmed the orderly administration of justice in violation of DLRPC 8.4(d).

## IV. THE BOARD DID NOT ERR IN FINDING THAT McCANN DID NOT VIOLATE CERTAIN DLRPC IN BOARD CASE NO. 38, 1992

■ The Board found that Rule 3.3(a)(4) was duplicative and the relevant misconduct was adequately covered by DLRPC 3.3(a)(1). The ODC contends that the Board erred in reaching this decision, claiming that one act of professional misconduct can simultaneously violate several disciplinary rules.[2]

■ DLRPC 3.3(a)(1) provides that a lawyer shall not make false or misleading statements to a tribunal. DLRPC 3.3(a)(4) provides that a lawyer shall not present false evidence to a tribunal. McCann's conduct falls under subsection (a)(1), as found above. Section (a)(4) applies only to situations

where, in the course of representing a client, a lawyer offers into evidence a document, item or testimony which the lawyer knows to be false. The act of offering evidence is a separate and distinct act in a judicial proceeding from the act of filing a pleading or making a statement. Those acts are covered by DLRPC 3.3(a)(1). Thus, the Board correctly determined that subsection (a)(4) does not apply here.

■ Although Count V of the Petition for Discipline alleged that McCann violated DLRPC 4.1(a)—making knowingly false statements to a third person while representing a client—the Board did not discuss this claim. The ODC argues that the Board erred and should have found that McCann also violated this DLRPC. Although McCann's conduct was clearly unprofessional[3] and the ODC's claim might have had merit had McCann represented himself to a third party as Mrs. Bow's nephew while Mrs. Bow was still alive, McCann made this representation only after Mrs. Bow had expired. Therefore, he cannot be said to have made knowingly false statements to a third party *while representing a client*.

■ DLRPC 5.5(a) provides that a lawyer shall not practice law in a jurisdiction in which he is not authorized to practice. The ODC contests the Board's finding that there was no clear and convincing evidence that McCann violated this DLRPC. In this case, McCann was practicing in Delaware on behalf of a long-standing client who had lived in Delaware but subsequently moved to Florida. *In re Estate of Waring*, 47 N.J. 367, 221 A.2d 193, 197 (1966), which McCann cites, is instructive on this point:

> Multi-state relationships are a common part of today's society and are to be dealt with in commonsense fashion. While the members of the general public are entitled

---

2. McCann objects to the ODC advancing this argument in this Court on the ground that it failed to "cross-appeal." Since this is not an appeal, but a review of the Board's Report, to speak of a cross-appeal is simply incorrect. Under current Rule 9(e), not applicable here, the ODC *may* file objections to a report of the Board. Nevertheless, the failure of the ODC to file objections does not preclude or limit this Court in its

plenary review of Board proceedings. *In re Mekler*, Del.Supr., 669 A.2d 655, 664–665 (1995).

3. Professionalism includes, but is not limited to, the requirement of following the DLRPC. Professionalism is a higher calling of what is *expected* of a member of the Bar, not merely what is required. *In re Mekler*, Del.Supr., 669 A.2d 655, 665–666 (1995).

to full protection against unlawful practitioners, their freedom of choice in the selection of their own counsel is to be highly regarded and not burdened by 'technical restrictions which have no reasonable justification.'

(citation omitted). It does not appear that McCann practiced in Florida, represented himself as being qualified to practice in Florida or solicited Floridian clients. Thus, the Board did not err in finding that he did not violate DLRPC 5.5(a).

■ DLRPC 8.4(b) prohibits a lawyer from committing a criminal act that reflects upon the lawyer's honesty. The Board found that the ODC failed to present clear and convincing evidence of such dishonest conduct, although his conduct was clearly unprofessional. The Board's finding is correct and is supported by McCann's prompt resignation as Mrs. Bow's personal representative when it became evident he was not qualified to act as such, and Florida's decision not to file criminal charges against him for his conduct. That finding will not be overturned.

## V. THE BOARD DID NOT ERR IN FINDING THAT McCANN'S CONDUCT IN BOARD CASE NO. 2, 1993, VIOLATED SEVERAL DLRPC

This issue stems from an alleged failure on McCann's part either to file several dues collection cases, or keep his client, BCI, informed of his progress in relation to these cases. As in Board Case No. 1, 1992, the Board found that McCann violated DLRPC 1.3 and 1.4(a). McCann challenges the Board's findings, arguing that a problem with deed restriction validity forced him to delay filing the cases. McCann's argument is unpersuasive.

■ The record demonstrates that McCann did not file the cases in a timely fashion, did not advise BCI of his progress and did not respond to BCI's inquiries. Regardless of whether the underlying deed restrictions were faulty, McCann had an obligation to inform BCI of his progress.

Further, McCann did not question these deed restrictions until several months after he was supposed to have filed the dues collection cases. In short, McCann seems to be relying upon the fact that, through sheer luck, his failure to file the cases was beneficial to BCI. This is irrelevant. The Board properly determined that, the result notwithstanding, McCann did not offer prompt and diligent legal service or keep BCI adequately informed. Thus, the Board correctly found that McCann violated DLRPC 1.3 and 1.4(a).

## VI. THE SANCTION RECOMMENDED BY THE BOARD

Pursuant to this Court's Order that the Board provide a recommendation, the Board suggested a sanction requiring:

(i) Public reprimand and two year probation;

(ii) Mandatory consultation with a physician regarding allergy treatment;

(iii) Mandatory consultation with Dr. David Raskin regarding terms of this discipline;

(iv) Letters of apology to all parties including the Court;

(v) Consultation with the Professional Guidance Committee and the Lawyers' Fund for Client Protection so as to receive suggestions concerning changes in his procedures and practices;

(vi) An additional three hours of Continuing Legal Education in ethics;

(vii) Written reports to the ODC every six months; and

(viii) Payment of ODC costs.

The ODC contends that this Court should impose a greater sanction because of: (1) McCann's previous willingness to conditionally admit to fewer counts of misconduct than he was eventually found to have violated, with the same sanctions;[4] and (2) his past sanctions for lack of communication with clients.

4. This contention is contrary to Board Rule 18(a), which expressly prohibits a conditional admission that is rejected from being used against the respondent. Accordingly, it has not been considered by this Court.

■ "This Court has exclusive authority and wide latitude in determining disciplinary sanctions over lawyers." *In re Figliola,* Del. Supr., 652 A.2d 1071, 1076 (1995) (citing *In re Agostini,* Del.Supr., 632 A.2d 80, 81 (1993)). The Board's recommendations regarding sanctions are often helpful, and were specifically sought by the Court here, but the Court is not bound by these recommendations and can impose sanctions that it feels are more appropriate. *Id.*

## VII. CONCLUSION

[18] When deciding upon the appropriate sanction the Court must consider that "[t]he primary purpose of disciplinary proceedings is 'to protect the public; to foster public confidence in the Bar; to preserve the integrity of the profession; and to deter other lawyers from similar misconduct.'" *Id.* (quoting *Agostini,* 632 A.2d at 81). The lawyer discipline system was not designed to be either punitive or penal in nature. *In re Rich,* Del.Supr., 559 A.2d 1251, 1257 (1989).

■ The Court appraises four factors when considering an appropriate sanction: (i) the nature of the duty violated; (ii) the lawyer's mental state; (iii) the actual/potential injury caused by the misconduct; and (iv) the existence of aggravating and mitigating circumstances. *Figliola,* 652 A.2d at 1076.

An investigation of these factors reveals that, as the ODC claims, the recommended sanction is inappropriate and that a suspension is more fitting. In *Carmine,* the Court found that the lawyer had neglected several client matters, failed to communicate with clients, and engaged in dishonest conduct. The Court suspended the lawyer for two years. 559 A.2d 248. Likewise, in *Tos,* the Court suspended a lawyer for one year for failing to communicate with clients, falsifying evidence, and failing diligently to attend to legal matters. 576 A.2d 607. *See also Higgins,* 565 A.2d 901 (lawyer suspended for one year due to lack of diligence and failure to communicate); *Rich,* 559 A.2d 1251 (lawyer disbarred for misrepresentations to courts,

neglect of cases, incompetence and other violations).[5]

In this case, McCann violated numerous DLRPC over the course of three years, in three separate matters. Further, he has been sanctioned twice before. *See* Board Case No. 17, 1989 (public reprimand) and Board Case No. 1002, 1986 (private admonition).

Aggravating factors here include: (a) previous sanctions; (b) multiple violations on this record; and (c) McCann's substantial experience in the practice of law. Mitigating factors here include: (a) McCann's medical problems; (b) McCann's efforts to rectify the consequences of some of his misconduct; (c) his cooperation with the ODC; and (d) his remorse. On balance, the aggravating factors outweigh the mitigating factors.

■ Given McCann's past sanctions, and the gravity of the violations here, compared with sanctions imposed on other lawyers, the sanction here should be a suspension of not less than one year, beginning January 1, 1996. The one-year suspension is subject to reinstatement after "produc[tion] of clear and convincing evidence of professional rehabilitation, fitness to practice law, and competence," *In re Reed,* Del.Supr., 584 A.2d 1207, 1209 (1990) (interpreting Rule 23 of Rules of Board on Professional Responsibility) (emphasis omitted), as well as a showing "that the resumption of the practice of law within Delaware will not be detrimental to the administration of justice," Bd.Prof.Resp.R. 23(f).

The conduct of the members of the Bar must meet reasonable professional standards so that the public is appropriately served by and protected from any member of the Bar of this Court who (like McCann in this case) lacks diligence in handling client matters, prepares and files false documents, and allows himself to act as a lawyer in preparing a will which benefits him. It is the exclusive responsibility of this Court to preserve the integrity of the Bar. Accordingly, **THE**

---

**5.** *Cf. In re Kennedy,* Del.Supr., 503 A.2d 1198 (1985) (history of repeated violations); *In re Ryan,* Del.Supr., 498 A.2d 515 (1985) (altering letter to state securities agency); *In re Frabizzio,* Del.Supr., 498 A.2d 1076 (1985) (false settlement sheets).

**JUDGMENT OF THIS COURT IS AS FOLLOWS:**

(1) Respondent shall be prohibited and suspended from engaging in the practice of law for a period of not less than one year, beginning not later than January 1, 1996 and ending upon his reinstatement, for which application may be made after December 31, 1996.

(2) During the suspension, Respondent shall conduct no act directly or indirectly constituting the practice of law (including the sharing or receipt of any legal fees).

(3) Respondent shall comply with the provisions of Rule 24 of the Rules of the Board on Professional Responsibility.

(4) Respondent shall arrange with another member or members of the Delaware Bar to protect the interests of any of his clients during the period of suspension, and shall submit to this Court on or before March 1, 1996, a certificate of compliance with this paragraph, co-signed by the attorney or attorneys who have undertaken such assignment.

(5) As a condition of reinstatement, Respondent must comply with the following:

(a) He shall send letters of apology to the complainants and any other injured parties in each of the matters referred to herein, with copies to the Office of Disciplinary Counsel.

(b) He shall consult with the Professional Guidance Committee of the Delaware State Bar Association and a representative of the Trustees of the Lawyers' Fund for Client Protection regarding his law office practices, and shall agree to implement whatever reasonable changes in procedures or practices are suggested by either of those entities.

(c) He shall complete an additional six (6) hours of continuing legal education in ethics and professionalism, over and above his presently mandated hours, prior to applying for reinstatement, and shall report his completion of such work to the Office of Disciplinary Counsel.

(d) He shall complete an additional six (6) hours of continuing legal education in law office management.

(e) He shall consult with Dr. David Raskin and discuss with him the terms of this discipline. McCann shall consult a physician who is a specialist in allergies. McCann shall undergo such follow-up treatment, if any, recommended by his physicians and shall report the results to the Office of Disciplinary Counsel.

(f) He shall pay the costs of the Office of Disciplinary Counsel for this disciplinary proceeding, as well as any other costs incurred in seeking reinstatement.

(6) This Opinion shall be disseminated by Disciplinary Counsel in accordance with Rule 3 and Rule 14 of the Rules of the Board on Professional Responsibility.