767 A.2d 191 (2001)
In the Matter of a Member of the Bar of the Supreme Court of the State of Delaware: Thomas V. McCOY, Respondent.
No. 508, 2000.
Supreme Court of Delaware.
Submitted: November 13, 2000.
Decided: January 17, 2001.
Thomas V. McCoy, Bethel, Delaware.
*192 Michael S. McGinniss, Esquire, Office of Disciplinary Counsel, Wilmington, Delaware.
Before VEASEY, Chief Justice, BERGER, and STEELE, Justices.
PER CURIAM.
The matter before the Court is a lawyer disciplinary proceeding. A panel of the Board on Professional Responsibility (Board) issued its Final Report recommending that the respondent, Thomas V. McCoy, be disbarred from the practice of law in Delaware due to numerous violations of the Delaware Lawyers' Rules of Professional Conduct (DLRPC). Neither McCoy nor the Office of Disciplinary Counsel (ODC) filed any objections to the Board's Final Report. After careful review, we affirm the Board's findings and adopt its recommendation that McCoy be disbarred.

Facts
ODC filed a petition with the Board to discipline McCoy on three separate matters, which were consolidated. McCoy did not file an answer to ODC's petition, nor did he request an extension to file an answer. Consequently, the allegations in the petition were deemed admitted.[1] A panel of the Board held a hearing on July 26, 2000 to decide the sole remaining issue of the appropriate disciplinary sanction to impose. ODC presented the testimony of James Griffin, Esquire, a receiver of McCoy's law practice, and Martin Zukoff, CPA, an auditor for the Lawyers' Fund for Client Protection. McCoy appeared at the hearing without counsel. He presented no witnesses other than himself.
The following undisputed findings of fact were taken from the Board's Final Report:[2]
No. 21, 1999 (Jane Nock/Delaware Heritage Basket)
This case relates to Respondent's representation of Jane Nock and a business she owned in part and operated, Delaware Heritage Basket Company ("DHB").
Since some time in 1996, Respondent had been acting as attorney for Ms. Nock in an ongoing medical malpractice lawsuit. In July 1998, Ms. Nock was experiencing serious financial difficulties with her business, and Respondent began giving her business advice. He did so because he thought that her business was not well managed and because she offered to give him 25 percent of the business. Respondent was interested in her offer and thought that, if it worked out, it could be "an exit for me out of the practice of law."
In August 1998, Ms. Nock's business checking account was closed by her bank due to a series of checks having been written without sufficient funds. Respondent then decided to allow checks and deposits relating to DHB to be processed through one of his own bank accounts. From August 28, 1998 through September 18, 1998, Respondent's account was regularly used for checks and deposits of DHB. Client funds and checks against those funds were commingled with Respondent's own funds and transactions.
In September 1998, Ms. Nock's financial difficulties became acute, as the police seized her records and her arrest was imminent. She apparently had a falling out with Respondent and retained new counsel, John Sandy, who made arrangements to work out her financial difficulties. Mr. Sandy then sought return from Respondent of all funds being held in his possession on behalf of Ms. Nock.
Respondent in December 1998 calculated that he was holding $383.49 due to Ms. Nock. Respondent did not pay that amount to Ms. Nock until June 1999 *193 when the ODC instructed him to do so. Mr. Zukoff, however, was unable to substantiate that amount because Respondent did not maintain adequate records relating to Ms. Nock's business. Respondent also kept no record of how he made the computation.
Mr. Zukoff found other areas of noncompliance by Respondent, specifically that his real estate escrow account was not in compliance.
Respondent's actions in this matter violated Rules 1.15(a), 1.15(b), 1.15(d), and 8.1(b).
No. 29, 1999 (Joseph Mascelli)
This matter involved Respondent's representation of Joseph Mascelli during the period November 1997 to April 1999 in the matter of a judgment entered against Mr. Mascelli in connection with a debt on a lease of commercial real estate. Respondent failed to carry out his client's instructions to resolve the matter, and as a result subjected his client to actions by the Sheriff against his assets. Respondent also failed to return promptly the $750 retainer paid by Mr. Mascelli and to respond in a timely manner to requests by the ODC in the matter.
Respondent's actions in this matter violated Rules 1.2(a), 1.3, 1.16(d), and 8.1(b).
No. 27, 1999 (Suspension/Receivership)
Respondent failed to provide the Supreme Court with the required 1999 Annual Registration Statement or to pay the required registration assessments. On July 13, 1999, the Supreme Court held a hearing on a Rule to Show Cause why he should not be suspended from practice. Respondent did not appear. The Court issued an order suspending Respondent indefinitely.
Thereafter, Respondent failed to communicate with the ODC despite several attempts by the ODC to contact him, and on July 16, 1999, two Receivers were appointed by order of the Court of Chancery. The order specifically obliged Respondent to cooperate with and assist the Receivers in notifying and protecting the interests of his clients. As detailed in the Petition and as James Griffin, one of the Receivers, testified at the hearing, Respondent failed to cooperate with or assist the Receivers. In particular, Respondent (1) failed to respond to repeated attempts by the Receivers to communicate with him about Receivership matters; (2) failed promptly to provide the Receivers, upon their repeated requests, with his active client files and related information about pending client matters, or with certain accounting records for his law practice; and (3) failed to provide the Receivers with access to his law office so that the Receivers could readily obtain client files and other information needed to carry out their obligations pursuant to the Court of Chancery's order.
Furthermore, Respondent failed to assist the Receivers in their efforts to deal with the noncompliant real estate escrow account. As of the hearing, Respondent still had failed to assist them in this regard.
Respondent's conduct has resulted in great burden to the Receivers and was prejudicial to the administration of justice and the interests of his clients, many of whom were in bankruptcy, in their active legal matters. The one-month and six-month accountings of the Receivers set forth in detail the difficulties created by Respondent, both for the Receivers and for his clients. For example, as described in the one-month accounting, the Receivers assisted Respondent's clients in obtaining continuances of pending matters to allow them to obtain substitute counsel. Lacking Respondent's assistance, the Receivers were forced to base their efforts solely on communications received from notices the Receivers sent to the courts, Sussex County attorneys and Respondent's clients. Because Respondent had not provided information with regard to *194 active matters until weeks after his suspension, the Receivers were unable to determine promptly what other matters required immediate attention. Moreover, the Receivers were unable to forward files to substitute counsel because of Respondent's lack of assistance.
Although Respondent, immediately prior to the one-month accounting, did turn over most of his active and closed files, he thereafter still had very little contact with the Receivers and did not participate in the Receivership in any way. His lack of assistance made it difficult for the Receivers to get a clear understanding of the status of some of the pending matters, as well as the operation of Respondent's law practice. In some instances, the Receivers found it difficult to assist Respondent's clients because of his lack of cooperation. Moreover, Respondent's lack of cooperation and failure to turn over account ledgers made it difficult for the Receivers to make a determination as to refunds owed to clients. As of the six-month accounting, the Receivers had spent approximately 150 hours on the Receivership, all of which time is uncompensated.
Respondent's conduct violated Rules 3.4(c), 8.4(d), and former Rule 7(6).
Respondent's Abandonment of His Law Practice
Respondent at the hearing tied his misconduct to his inability to run a practice of law. He said, "I shouldn't practice law. I don't enjoy it." He is "not good at trying to do all the things that are required to be done, the bookkeeping, the keeping track of letters and things like that."
For some time prior to his suspension, Respondent had been "trying ... to not practice law." Then in about October 1998, he determined to leave the practice. Respondent informed his secretary, who then got another job but continued to come back and help him with his books through January 1999.
Respondent was "projecting to wrap up my business by April or May," but "it just wasn't wrapping up that quickly" and "I just couldn't keep up." He failed to file his 1999 Annual Registration Statement or pay the required registration assessments prior to the February 1, 1999 deadline. In about March 1999, he hired a bookkeeper briefly and a secretary to answer telephones, but apparently he still could not keep up and "it just all falls apart on me." He testified that he became "depressed" and "upset," apparently about the way wrapping up his practice was turning out. However, he did not then, or at any time thereafter, consult a psychologist or psychiatrist.
Respondent felt that he had "put forth a hundred percent until things started to fall apart on me. And then it all falls on me. It doesn't fall on my secretary, who [has] left." He also expressed that there was a lack of guidance and support available for him in his practice from the Bar and others.
Nonetheless, Respondent made little effort, if any, to turn over his existing clients to other attorneys between October 1998 when he decided to wrap up his practice and July 1999 when he was suspended. Moreover, he continued to take on new traffic cases and bankruptcies from October 1998 to May 1999. He said that "there wasn't a lot of work" to the bankruptcy cases, which were the bulk of his practice, so that he could end them "without a lot of transfer."
Respondent also admitted that even after the Receivers were appointed in July 1999 and took over his practice, thus effectively providing assistance to him, he for the most part did not communicate with or assist them. He testified that he "was not cooperative in the month following [the suspension]. And that's the only reason I can put on it. I was upset." Even after that month, and up until the hearing a year later, he remained uncooperative.

*195 Board's Findings and Recommendation

In evaluating the appropriate sanction to recommend, the Board properly considered the following factors: (a) the ethical duties McCoy violated; (b) McCoy's mental state; (c) the actual or potential injury McCoy's misconduct caused to his clients or third parties; and (d) aggravating and mitigating circumstances.[3]
The Board found that McCoy had violated numerous professional duties, including: (i) failing to abide by a client's decisions;[4] (ii) failing to act with diligence and promptness in representing a client;[5] (iii) commingling funds;[6] (iv) failing to promptly deliver funds to a client upon request;[7] (v) failing to maintain proper books and records;[8] (vi) failing to take reasonable steps to protect a client's interests upon termination of representation;[9] (vii) knowingly disobeying the Court of Chancery's order to cooperate with the Receivers and knowingly refusing to fulfill his Annual Registration obligations;[10] (viii) willfully failing to appear before the Supreme Court on a Rule to Show Cause;[11] (ix) willfully failing to respond to ODC's requests for information;[12] (x) engaging in conduct that was prejudicial to the administration of justice.[13]
The Board found that McCoy had knowingly or intentionally committed all of these acts of professional misconduct. Intentional misconduct is the most culpable form of misconduct.[14] As for the injury caused by McCoy's misconduct, the Board concluded that, while no irreparable harm occurred, McCoy had caused harm to his clients and had exposed his clients to the risk of serious harm, and it was "only fortuitous" that more drastic harm did not result.
The Board considered the following factors in aggravation: (i) McCoy's prior disciplinary record, consisting of a public reprimand in 1997 and a private admonition in 1994; (ii) McCoy's pattern of misconduct; (iii) McCoy's commission of multiple offenses in failing to carry out his responsibilities; (iv) the vulnerability of McCoy's victims, who were predominantly clients in bankruptcy; and (v) McCoy's record of indifference to making restitution. In mitigation, the Board noted, without adopting, McCoy's position that "he had done a good job over the years representing many clients and had not stolen money from clients."
After balancing all of the factors, the Board concluded that disbarment was the only appropriate sanction. In reaching that conclusion the Board cited to Standard 4.41 of the ABA Standards for Imposing Lawyer Sanctions (ABA Standards), which provides:
4.41 Disbarment is generally appropriate when:
(a) a lawyer abandons the practice and causes serious or potentially serious injury to a client; or

*196 (b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client;
(c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.[15]
The Board also cited to Standard 8.1(b), which provides that disbarment is generally appropriate when a lawyer "has been suspended for the same or similar misconduct, and intentionally or knowingly engages in further acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession."[16] In this case, McCoy was suspended by this Court on July 13, 1999 as a result of his failure to appear before the Court on a rule to show cause why he should not be suspended for failing to file his Annual Registration Statement with assessments. Shortly after his suspension, the Court of Chancery appointed the Receivers to take control of McCoy's law practice. Even after he was suspended, McCoy knowingly engaged in misconduct by refusing to cooperate with or assist the Receivers in winding down his practice in a way that would not cause prejudice to his clients.

Standard and Scope of Review Appropriate Sanction
McCoy failed to respond to ODC's petition for discipline. Consequently, the Board properly deemed the factual allegations of the petition to be admitted. Because the Board's factual findings are undisputed, our task now is to consider the appropriateness of the Board's recommended sanction.[17] While the Board's recommendation may be helpful, the Court is not bound by it and may impose any sanction it deems appropriate.[18] In deciding upon an appropriate sanction, this Court considers that "the multifaceted but congruent purpose of disciplinary proceedings is `to protect the public; to foster public confidence in the Bar; to preserve the integrity of the profession; and to deter other lawyers from similar misconduct."'[19] Although the Court has wide latitude in determining the form of discipline to be imposed, we are guided by our prior lawyer disciplinary decisions.[20] Our precedent reflects that, in determining an appropriate sanction for lawyer misconduct, the Court has cited favorably to the theoretical framework set forth in the ABA Standards.[21]
In this case, the Board found, and we agree, that ABA Standards 4 .41 and 8.1(b) compel the conclusion that disbarment is the only appropriate sanction for McCoy. As the Board noted, McCoy's violations were numerous and extended over a long period of time. He engaged in a pattern of neglect with respect to client matters and effectively abandoned his law practice without taking any steps to protect his clients, which ultimately caused serious or potentially serious injury to his clients. Not only did McCoy fail to take action to protect his clients, but he effectively erected a roadblock to prevent the Receivers from ensuring that McCoy's clients were properly served.
McCoy has received lesser sanctions for similar disciplinary violations. In fact, McCoy was on suspension by this Court *197 when the Court of Chancery ordered McCoy to cooperate with the appointed Receivers in winding up his law practice. McCoy failed to comply with that order and continued to ignore his professional duties to his clients, the legal system, and the profession. Having been given many opportunities to conform his conduct to the standards expected of a Delaware lawyer and having proven himself unable or unwilling to do so, this Court concludes that disbarment is the only appropriate remedy to protect the public and preserve the integrity of the legal profession.

Conclusion
The Board's recommended sanction is accepted. It is hereby ordered that Thomas V. McCoy be disbarred from membership in the Delaware Bar. His name shall be stricken immediately from the roll of attorneys entitled to practice before the courts of this State.
NOTES
[1] See DELAWARE LAWYERS' RULE OF DISCIPLINARY PROCEDURE Rule 9(d)(2).
[2] This recitation of facts does not include the Board's supporting citations to the record.
[3] In re Reardon, Del.Supr., 759 A.2d 568, 575 (2000) (citing ABA STANDARDS FOR IMPOSING LAWYER SANCTIONS, Theoretical Framework (1986 and as amended 1992)).
[4] DELAWARE LAWYERS' RULES OF PROFESSIONAL CONDUCT Rule 1.2(a).
[5] Id. Rule 1.3.
[6] Id. Rule 1.15(a).
[7] Id. Rule 1.15(b).
[8] Id. Rule 1.15(d).
[9] Id. Rule 1.16(d).
[10] Id. Rule 3.4(c).
[11] DELAWARE LAWYERS' RULES OF DISCIPLINARY PROCEDURE Rule 7(e) (formerly RULES OF THE BOARD ON PROFESSIONAL RESPONSIBILITY Rule 7(6)).
[12] DELAWARE LAWYERS' RULES OF PROFESSIONAL CONDUCT Rule 8.1(b).
[13] Id. Rule 8.4(d).
[14] In re Howard, Del.Supr., 765 A.2d 39, 42-43 (2000).
[15] ABA STANDARDS FOR IMPOSING LAWYER SANCTIONS Standard 4.41 (1986).
[16] ABA STANDARDS FOR IMPOSING LAWYER SANCTIONS Standard 8.1(b) (1986).
[17] In re Dorsey, Del.Supr., 683 A.2d 1046, 1048 (1996).
[18] In re Mekler, Del.Supr., 669 A.2d 655, 667 (1995).
[19] In re Funk, Del.Supr., 742 A.2d 851, 855 (1999) (quoting In re Figliola, Del.Supr., 652 A.2d 1071, 1076 (1995)).
[20] In re Maguire, Del.Supr., 725 A.2d 417, 423 (1999).
[21] In re Benge, Del.Supr., 754 A.2d 871, 879 (2000).