In the Matter of a Member of the Bar of the Supreme Court of Delaware:

**Richard S. McCANN, Respondent.**

**No. 385,2005.**

Supreme Court of Delaware.

Submitted: Oct. 12, 2005.
Decided: Nov. 1, 2005.

Jeffrey M. Weiner, of Fox Rothschild, Wilmington, DE, for Richard S. McCann, Esquire.

Patricia Bartley Schwartz, of the Office of Disciplinary Counsel, Wilmington, DE.

Before BERGER, JACOBS and RIDGELY, Justices.

PER CURIAM:

This is an attorney disciplinary proceeding. The Board on Professional Responsibility (Board) filed a Report finding numerous instances of professional misconduct by respondent, Richard S. McCann. The Report, which is appended to this opinion and incorporated herein by

reference, concludes that McCann should be suspended for three years. McCann advised this Court that, although he disagrees with some of its findings, he would not file any objections to the Report. The Office of Disciplinary Counsel (ODC) did file an objection to the recommended sanction, arguing that McCann should be disbarred. After carefully considering the record, we conclude that the appropriate sanction is disbarment.

### Factual and Procedural Background

ODC filed a Petition for Discipline with the Board on December 1, 2004. After a two-day hearing, the Board found, by clear and convincing evidence, that McCann violated the Delaware Rules of Professional Conduct (Rules). McCann's misconduct spanned almost a decade, and resulted in 37 violations of 6 different Rules. In summary, the record establishes that:

1) McCann failed to maintain proper books and records relating to client funds, but falsely certified that he was in compliance for the years 2000—2002;

2) He failed to timely file and pay federal and state payroll taxes, but falsely certified that he was in compliance for the years 1998—2003;

3) He failed to timely pay his personal state and federal income taxes. As of the hearing date, McCann had tax liens totaling more than $140,000, covering the period from 1987—2002;

4) McCann failed to timely file inventories, disburse funds, and close seven estates. In one case, the final distribution was not made until 19 years after the decedent died. In another case, McCann lost needed records, which were left sitting in boxes for years. Several estates required attention during the period from 1996—1998, when McCann was suspended

from the practice of law, but McCann never made arrangements for another lawyer to handle those matters. In addition, McCann paid himself excessive attorneys' fees for his administration of some of those estates.

The Board recommended that McCann be suspended for three years and that, if he is reinstated, McCann be required to practice in association with other lawyers, without responsibility for financial matters or bookkeeping.

### Supreme Court Review

 The Supreme Court's authority and the governing standards in matters of attorney discipline are settled:

> This Court has the inherent and exclusive authority to discipline members of the Delaware Bar. Sanctions recommended by the Board often aid in our determination, but are not binding on this Court. The sanctions are not designed to be either punitive or penal. The relevant factors to be considered in determining an appropriate sanction are: a) the nature of the duty violated; b) the lawyer's mental state; c) the actual/potential injury caused by the misconduct; and d) the existence of aggravating and mitigating circumstances. In addition, to assure fairness, the sanction must be consistent with prior disciplinary decisions.[1]

McCann's misconduct was serious and persistent. He violated duties to his clients by failing to provide competent representation; failing to act with reasonable diligence and promptness; charging excessive fees for his services; failing to safeguard his clients' property; and failing to promptly distribute funds to estate beneficiaries. He also violated duties to the profession and the administration of jus-

---

1. *In re Landis,* 850 A.2d 291, 293 (Del.2004)

(Internal quotations and citations omitted.).

tice by, among other things, failing to pay payroll taxes; failing to pay personal income taxes; repeatedly falsely certifying his compliance with record keeping and tax obligations; knowingly disobeying applicable rules of the Court of Chancery; and knowingly disobeying this Court's prior suspension order.

McCann's mental state, at least with respect to his failure to pay taxes and his disregard of court orders and rules, was knowing. In addition, his neglect and delay in handling his clients' estates created the potential for serious harm. Finally, the only mitigating factor is McCann's remorse. The aggravating factors include his extensive pattern of misconduct; McCann's substantial legal experience; his failure to cooperate with ODC; and his prior disciplinary record.

Standard 8.1 of the ABA Standards for Imposing Lawyer Sanctions provides that disbarment is generally appropriate when a lawyer "intentionally or knowingly violates the terms of a prior disciplinary order and such violation causes injury or potential injury to a client, the public, the legal system, or the profession...." McCann knowingly violated the terms of his prior suspension by failing to turn all of his files over to an active member of the bar; by failing to notify all parties of his suspension; and by paying himself attorney's fees from estates during his suspension. That misconduct caused potential injury to the estate beneficiaries. Thus, disbarment is the appropriate sanction.

Consideration of our precedents confirms this conclusion. In *In re Benge*,[2] the respondent had a significant prior disciplinary record; engaged in misconduct in

his handling of several estate matters; charged unreasonable fees; and knowingly disobeyed a court order. McCann has a similar disciplinary record and engaged in more serious misconduct than Benge. In addition to mishandling estate matters, overcharging, and violating court orders, McCann failed to pay personal and payroll taxes for many years. This Court disbarred other attorneys for comparable misconduct.[3]

### Conclusion

Based on the foregoing, it is hereby ORDERED that:

1) Richard S. McCann be, and hereby is, disbarred from membership in the Delaware Bar. His name shall be stricken immediately from the roll of attorneys entitled to practice before the courts of this State.

2) ODC shall petition the Court of Chancery for the appointment of a Receiver for McCann's law practice, and McCann shall cooperate with the receiver.

3) McCann is required to pay all costs of this disciplinary proceeding upon receipt of ODC's statement of costs.

4) ODC shall disseminate this opinion and order in accordance with Rule 14 of the Delaware Lawyers' Rules of Disciplinary Procedure.

### APPENDIX

BOARD ON PROFESSIONAL RESPONSIBILITY
OF THE
SUPREME COURT OF DELAWARE

IN THE MATTER OF A MEMBER OF THE BAR OF THE SUPREME COURT

---

2. 783 A.2d 1279 (Del.2001).

3. *In re Motter*, 875 A.2d 618 (Del.2005) (failure to maintain books and records; failure to pay taxes; false certificates of compliance; and injury to three clients); *In Re McCoy*, 767 A.2d 191 (Del.2001)(pattern of client neglect in abandonment of law practice; failure to maintain books and records; and knowing disobedience of court order).

 

OF DELAWARE: RICHARD S. MCCANN, RESPONDENT.

### CONFIDENTIAL

Board Case Nos. 2, 35, 49,2003

No. 385,2005

## REPORT OF THE BOARD OF PRO-FESSIONAL RESPONSIBILITY

This is the report of the findings and recommendations of the Board of Professional Responsibility of the Supreme Court in the above captioned matter. A Hearing was commenced on January 12, 2005 in the Supreme Court Hearing Room, 11th Floor, Carvel State Building, 820 North French Street, Wilmington, Delaware. A second day of the Hearing was held on January 28, 2005 in the same location. By agreement of counsel and the Board, the record remained open following the January 28, 2005 hearing for a written submission from the Respondent regarding mitigating factors in the imposition of disciplinary sanctions. The Respondent's supplemental submission was received on March 2, 2005. The Hearing record was closed on March 14, 2005.

The Panel of the Board of Professional Responsibility consisted of Clay T. Jester, Esquire, Donald A. Blakey, Ph.D., and Mark L. Reardon, Esquire (Chair). The Office of Disciplinary Counsel ("ODC") was represented by Patricia B. Schwartz, Esquire. Respondent Richard S. McCann, Esquire appeared *pro se*.

## I. *Procedural History*

The Office of Disciplinary Council ("ODC") filed a Petition for Discipline with the Board on Professional Responsibility of the Supreme Court of the State of Delaware ("the Board") on December 1, 2004. As set forth in more detail below, the ODC asserted that Richard S. McCann, Esquire ("Respondent") violated the Delaware Rules of Professional Conduct ("the Rules"). The Respondent filed a response to the ODC's petition for discipline on December 22, 2004. At the Hearing, seven (7) witnesses provided testimony, including Respondent who testified on his own behalf. Also, the ODC presented an array of documents in support of the Petition for Discipline.

## II. *The Alleged Violations of Professional Conduct*

The ODC alleges Respondent violated six (6) specific Delaware Rules of Professional Conduct in a variety of ways. As an overview, the ODC alleges Respondent violated Rule 1.1 by failing to provide competent representation in several estate matters; Rule 1.3 by failing to act with reasonable diligence and promptness in several estate matters; Rule 1.5(a) by charging unreasonable fees in several estate matters; Rule 1.15(a) by failing to safeguard client funds by having more than $500.00 of his own funds in a client escrow account and by failing to safeguard the property of his clients by not keeping the records of several estate matters in an orderly fashion; Rule 1.15(b) by failing to pay his payroll taxes in a timely manner and by failing to timely deliver funds to beneficiaries of several estates; Rule 1.15(d) by failing to maintain the books and records of his client escrow accounts and estate accounts in an orderly fashion; Rule 3.4(c) by knowingly disobeying an obligation under the Court of Chancery Rules and disobeying a 1995 decision of the Delaware Supreme Court governing his suspension in the practice of law; Rule 8.4(b) by engaging in criminal conduct that reflects adversely on a lawyer's honesty, trustworthiness or fitness in failing to timely pay income taxes; Rule 8.4(c) by engaging in conduct involving dishonesty,

fraud, deceit or misrepresentation by falsely representing the status of his books and records on the Certificates of Compliance filed with the Supreme Court of Delaware; Rule 8.4(d) by engaging in conduct prejudicial to the administration of justice by failing to pay personal tax obligations and by failing to provide accurate representations to the Supreme Court of Delaware on his Certificates of Compliance regarding the status of the books and records of his private law practice and by failing to timely probate several estates on which he was acting as legal counsel.

In response to the foregoing allegations, Respondent defends the charges involving the books and records of his law practice by pointing to the fact that "he was led down the primrose path by a bookkeeper in [his] own office who assured [him] everything was ok." [T–11]. As to the charges involving lack of diligence, promptness and timeliness on Respondent's substantive handling of estate matters, Respondent denies any wrongdoing. As for allegations relating to outstanding tax obligations, Respondent at first challenged the existence and the amount of the outstanding obligation. However, after the January 12, 2005 hearing on this matter, Respondent made formal inquiry of the taxing authorities which resulted in his making payments towards the outstanding state tax obligations. Respondent admittedly took this corrective action for purposes "to come up here [before the Board of Professional Responsibility] and say those liens are gone." [T–339].

### III. *Factual Findings of The Board*

1. The Respondent is a member of the bar of the Supreme Court of Delaware. He was admitted to the bar in 1964.

2. The Respondent was suspended from the practice of law effective January 1, 1996. Pursuant to the requirements of his 1996 suspension, the Respondent was not to conduct any act directly or indirectly constituting the practice of law, including sharing or receiving any legal fees. He was to "arrange with another member or members of the Delaware Bar to protect the interests of any of his clients during the period of suspension" and to submit to the Court a Certificate of Compliance co-signed by the attorney or attorneys who have undertaken such assignments. He was also required to comply with Rule 24 of the Delaware Lawyers Rules of Disciplinary Procedure which implicates duties under Rule 23. Rule 23 requires an attorney suspended from the practice of law to notify all "persons or their agents or guardians to whom a fiduciary duty is or may be owed at any time after discipline..... [or] persons with whom the formally admitted may at any time expect to have professional contacts under circumstances where there is a reasonable probability that may infer the Respondent continues as an attorney in good standing" that the attorney is disqualified to act as the attorney in the matter. *In the Matter of Richard S. McCann,* 669 A.2d 49 (Del.1995). [Attached hereto as Exhibit 1]. On March 6, 1998, the Respondent was reinstated to the practice of law in Delaware.

3. At all times relevant to the pending petition for Discipline, except for the period of suspension, the Respondent was engaged in the private practice of law as a solo practitioner with an office in Newark, Delaware. His practice is concentrated in the areas of estate and real estate matters. While the Respondent hired bookkeeping support for his law practice, the Respondent is solely responsible for the books and record keepings of his law practice and the required certification. [T–239–240].

### Board Case No. 2, 2003 (Lawyers Fund of Client Protection)

4. On August 22, 2002, Mr. Martin Zukoff, C.P.A., auditor for the Lawyers' Fund for Client Protection ("LFCP") provided the ODC with a report that outlined serious deficiencies in the Respondent's law office books and records under Rule 1.15(d)(the "August 2002 Report").

5. The accounting deficiencies discussed in Mr. Zukoff's report are summarized as follows: (1) no bank reconciliations had been performed since October 1999; (2) no client subsidiary ledger was prepared, listing client by name and balance, and no total of client balances; (3) no reconciliations of end-of-month cash balances to total client funds being held; (4) it could not be determined whether there were any negative client balances, unidentified client funds, or undisbursed client or third party funds because no subsidiary ledger existed and no reconciliations had been performed; (5) the Respondent maintained more than the allowable $500.00 of his own funds in the escrow account; (6) payroll taxes were not timely filed and paid for the calendar years 1998 through 2001—these taxes were filed and paid at the end of each year and; (7) an estate escrow account had an overdraft balance of $8,578.58 due to an incorrect distribution to the beneficiaries of the estate in July 2002.

6. For each of the areas of non-compliance identified in paragraph 5 above and further elaborated on in the August 2002 Report, the Respondent certified on his 2000, 2001, and 2002 Certificates of Compliance that he was "in compliance". [Respondent's Certificates of Compliance are part of the Hearing record as the Certificates were attached to ODC's Petition as Exhibit 3.] The August 2002 Report of Mr. Zukoff confirms that Mr. McCann's responses to this effect were false. In addition, the Respondent certified on his 1998, 1999, 2000, 2001, 2002 and 2003 Certificates that all federal and state payroll taxes had been filed and paid on a timely basis. Clear evidence establishes that these responses too were false. From 1998 until August 2002, all quarterly returns were filed and the taxes for these periods were paid in one "lump" at the end of December in each of those years.

7. On August 28, 2002, the ODC wrote to the Respondent, enclosing a copy of the August 2002 Report and informing the Respondent that the deficiencies must be corrected promptly. On September 16, 2002, the Respondent wrote to the ODC indicating he would have the reconciliations completed by October 1, 2002. Mr. Zukoff conducted a follow-up audit of Respondent's books and records on January 8, 2003, at which time the Respondent advised Mr. Zukoff that he had completed the reconciliations of his escrow account and monthly client listings through June 2001. The Respondent, however, was unable to produce the reconciliations or client listings for inspection. According to Mr. Zukoff's follow-up report, dated January 10, 2003 (the "January 2003 Report"), the only deficiencies corrected since August 2002 were that the Respondent had reduced the amount of his own funds in the escrow account to below the allowable amount and he had eliminated the negative balance in his estate trust account. He paid state and federal payroll taxes for the first, second and third quarter of 2002; however he failed to file quarterly federal and state payroll tax returns for those periods.

8. On February 13, 2003, the Respondent advised the ODC that he had retained an accountant, Charles B. Carey, to complete the reconciliations for his escrow account and that the matter should be con-

cluded by the end of February 2003. Following numerous delays, Mr. Zukoff conducted a second follow-up audit on May 8, 2003. His findings (the "May 2003 Report") noted that bank reconciliations and monthly listings of client balances had been prepared for December 2002 through April 2003, but the reconciled cash balances were not in agreement with the monthly totals of client balances. For the months of December 2002, and January and February 2003, the reconciled cash balance exceeded the total of client balances and for the months of March and April 2003, the total of client balances far exceeded the reconciled cash balance in the escrow account. Based on this information, Mr. Zukoff could not determine whether there were any negative client balances from December 2002 through April 2003. Mr. Zukoff determined that until a full accounting was performed from 1999 through the end of 2001, all future reconciliations would remain incomplete because any such reconciliation may omit outstanding transactions from that time period. As of May 2003, all payroll tax returns were filed and all tax payments were being made on a timely basis.

9. On June 16 and June 24, 2003, Mr. Joseph McCullough, auditor for the LFCP, conducted an audit of the Respondent's books and records and the records for various estate matters on which Respondent was acting a legal counsel. As part of the audit, Mr. McCullough met with the Respondent and Mr. Carey. Mr. Carey reported that he was manually reviewing various estate and real estate records to ascertain the variances and that Respondent would be advised how to correct the account deficiencies. [T–20]. In Mr. McCullough's Final Audit Report issued September 12, 2004, he noted that as of June 24, 2003 he identified two real estate settlements overfunded by $174,403.90; thirteen negative client balances totaling $13,041.66; [T–21] and approximately 110 outstanding checks over six months old. [McCullough & Associate's Final Audit Report, September 12, 2004] On November 14, 2003, Mr. McCullough, conducted a follow up audit. As of that date, the money that overfunded the real estate settlement had been returned to the appropriate financial institutions. At the same time, approximately $13,000 was transferred from the operating account to the real estate account to cover negative client balances. [T–23].

10. On August 10 and 24, 2004, Mr. McCullough again met with the Respondent and Mr. Carey. Mr. McCullough discovered that monthly reconciliations were being done for the real estate escrow account and monthly client balances were reconciled with the bank statements balances for January through June 2004.

11. Testimony and documents presented to the Board also establish Respondent's record of difficulties with respect to Federal and State tax obligations. Unrefuted evidence confirms that as of the date of the January 12, 2005 Hearing, the Respondent had a Federal Tax lien in the amount of $74,639.51 covering the periods of 1987 through 1993 for personal income taxes. Unrefuted evidence also establishes Respondent had State of Delaware tax liens totaling approximately $70,000 for obligations dating from 1994 to 2002. [T–24].[1]

---

1. Respondent's January 28, 2005 submission to the Board of January 27, 2005 correspondence from the Delaware Division of Revenue is, regrettably, too little, too late. While the Division of Revenue correspondence appears to suggest that certain of Respondent's tax obligations were paid the day before, the Board finds the appropriate time for Respondent's corrective action was years earlier, not

### Board Case No. 35, 2003 (Various Estate Matters)

12. In May 2003, it came to the attention of the ODC that the Respondent was extremely delayed in disbursing estate funds in one matter. The LFCP was not aware the Respondent was holding third party funds in escrow accounts on estate matters because the Respondent had failed to identify these accounts on the books and records portion of his Certificates of Compliance. As a result, Mr. Zukoff had not previously reviewed any books and records associated with the Respondent's estate accounts.

13. Upon learning of the estate accounts, and at the request of the ODC, on June 16 and June 24, 2003, Mr. McCullough attempted to conduct an investigative audit of the Respondent's estate matters but was unable to do so because the Respondent had done no reconciliations on his estate matters, some of which had been open for many [more than 10] years. In July, 2003, Respondent was informed that Mr. McCullough had determined that many of the Respondent's estate matters were stale and some records could not be found. For other estates, Respondent did not know the physical location of the principal of some of the estates. Generally, estate records in Respondent's office were found to be poorly maintained. In some cases, estate records were found unlabeled in a box, and mixed together with other estates' records. [T–26]. The condition of Respondent's records prompted Mr. McCullough to advise Respondent of the fundamental importance of proper record keeping and properly closing estates and promptly disbursing to beneficiaries. [T–26].

the day before the sanction hearing on a

### Sellers Estate

14. John J. Sellers ("Sellers") died on January 11, 1985. Sellers was survived by his wife, Edna Sellers. In the will which the Respondent drafted for Sellers, the Respondent was named Executor of the estate ("Sellers Estate"). On January 31, 1985, the will was filed with the Register of Wills and the Sellers Estate was opened. The will made some modest cash gifts and gifts of tangible personal property. There is also a gift of a life estate in the real estate to Edna Sellers, and the residuary estate was to be held in trust to provide for her for the rest of her life. Upon her death, the real estate was to be sold and the proceeds, plus whatever was in the residuary estate, were to go to various charities including the Order of the Holy Cross, All Saints Sisters of the Poor, St. Clement's Episcopal Church, Newark Senior Center, Masonic Home of Delaware, and Masonic Home of Virginia.

15. The inventory of the Sellers Estate's assets was due to be filed on April 31, 1985. It was filed on January 11, 1999, showing that the gross estate's worth at time of death of the decedent was approximately $273,000. [T–28]. The first accounting of the Sellers Estate was due to be filed on January 31, 1986. It was filed on September 28, 2000. [T–171]. Edna Sellers died on June 26, 1995. Her estate was opened on August 6, 1995 and closed on January 10, 1997. The attorney for that estate was John J. O'Brien, Esquire. As of May 16, 2003, the Newark Senior Center had not received its inheritance from the Sellers Estate even though the real estate had been sold in April, 1996. [T–30].

16. According to Mr. McCullough's June 2003 audit, there was approximately $200,000 in an investment account separate

disciplinary matter.

from the Sellers Estate account. There was no accounting as to what funds had been distributed from the investment account. Critical documents were located in boxes unsorted. The investment account was liquidated on December 15, 2003 and those funds were transferred to the Sellers Estate account. On August 6, 2004, there was a final distribution to the charities identified in the will. On that same date there was a check made payable to the Respondent in the amount of $25,249.99 for legal fees. [T–31].

17. Pursuant to the requirements of his suspension from the practice of law, the Respondent was to "arrange with another member or members of the Delaware Bar to protect the interests of any of his clients during the period of suspension." The Sellers Estate was opened in 1985. The Respondent was suspended from the practice of law effective January 1, 1996 and was not reinstated until March 1998. During that time period, the Respondent did not arrange with another member of the Delaware Bar to protect the interest of the beneficiaries of the Sellers Estate. [T–264].

### *Geary Estate*

18. J. Gideon Geary died on April 29, 1995. On May 11, 1995, the Geary Estate ("Geary Estate") was opened and the Respondent was appointed the personal representative of the estate by the Register of Wills. The inventory for the Geary Estate was due to be filed with the Register on August 11, 1995. The first accounting was due to be filed with the Register on or before May 11, 1996. The Respondent failed to file the inventory and the accounting. [T–125].

19. According to the will, funds from the Geary Estate were to be distributed to various charities. The bulk of the estate, valued at over $500,000, was left to The First Church of Christ, Scientist ("TFCCS"). Counsel for TFCCS communicated or attempted to communicate with the Respondent on approximately twenty occasions to ascertain when the Respondent intended to file the inventory and the accounting and make final distribution to TFCCS. In spite of promises to do something, the Respondent failed to act. Cathryn E. Place, the Estate and Trust Distributions Officer at TFCCS testified in detail about her repeated and futile efforts to prompt Respondent to take the actions necessary for final distribution. [T–112–121].

20. Records establish that the Respondent made two distributions in 1995 to TFCCS: $175,000 in October and $330,000 in November. However, on numerous occasions in 1996 and 1997, Ms. Place asked the Respondent either by letter or phone for an update on the timing of the final distribution. If the Respondent replied, he always indicated something would be done in the near future. Inevitably, nothing was done. In April 1998, the Respondent sent a check for $100,000 to TFCCS with a letter stating final distribution would come with copies of court documents. The Respondent never sent those documents. [T–121].

21. On or about August 21, 2003, TFCCS filed a petition to have the Respondent removed as personal representative of the Geary estate. The Respondent did not answer the petition and he failed to appear for the Court of Chancery hearing to answer questions about his handling of the Geary Estate. [T–127]. On March 10, 2004, the Respondent was removed by the Court and David J. Ferry, Jr., Esquire was appointed as personal representative of the Geary Estate. [T–71]. On March 12, 2004, Mr. Ferry wrote to the Respondent advising him that the Court had ap-

pointed him personal representative of the Geary Estate and requested the Respondent provide all information, accounts, and documents relating to the Geary Estate. Mr. Ferry wrote to the Respondent again on March 24, 2004 requesting the information regarding the Geary Estate. On April 2, 2004, the Respondent wrote to the Court of Chancery apologizing for not attending the March hearing claiming he was not aware of the hearing. He told the Court he was in the process of gathering the records for the Geary Estate and would forward them to Mr. Ferry. [T–71].

22. On June 10, 2004, Mr. Ferry wrote to the Respondent requesting additional documents and information about the Geary estate, including the estate checkbook, checkbook register, bank statements from August 1995 through January 1996, and bank statements for February, March and June 2000. On October 4, 2004, the Respondent wrote to Mr. Ferry indicating he was not able to locate any additional documents or items. Respondent explained that as a result of Hurricane Floyd, his basement was flooded and many of his estate files were destroyed. [T–251].

23. The Respondent wrote checks from the Geary estate totaling $25,000 for legal fees from August 1995 through October 2000. Four of the checks were written for legal fees in 1996, during the period of his suspension. [T–32]. According to Mr. Ferry, a calculation of the allowable fee commission under Rule 192 would be approximately $18,700 [T–75]. Also according to Mr. Ferry, implicit in accepting the fee is that the attorney had handled the estate appropriately and timely filed all paperwork necessary to complete the closing of the estate. [T–75]. Based on the statutory fee schedule, and the testimony of Mr. Ferry, the fee drawn in this instance ex-

ceeds the allowable schedule. More disturbing, four (4) 1996 fee disbursements were made by Respondent during the period of his earlier suspension.

24. Pursuant to the requirements of his suspension, the Respondent was to "arrange with another member or members of the Delaware Bar to protect the interests of any of his clients during the period of suspension." The Geary Estate was opened in 1995. The Respondent was suspended from the practice of law effective January 1, 1996 and was not reinstated until March 1998. During that time period, the Respondent did not arrange with another member of the Delaware Bar to protect the interests of the beneficiaries of the Geary Estate. [T–264]. Moreover, Ms. Place provided unrefuted testimony that at no time during Respondent's period of suspension did he indicate he had been suspended from the practice of law. [T–121].

### Other Estate Matters

25. Pursuant to 12 Del. C. § 1905(a) an inventory should be filed with the Register within three months after the estate is opened. Pursuant to 12 Del. C. § 2301(a) an accounting of the estate should be filed every year from the date it was opened. The record established there were numerous estate matters that the Respondent took no action on until the Register issued a Rule to Show Cause and even then the Respondent acted at the last minute. Illustrative of Respondent's recurring lapses in this respect is his dilatory handling of the Estate of Alice Baker [T–150], the Estate of William Cooper [T–156], the Estate of Ralph Draper [T–156], and the Estate of Louise Kirch [T–160]. The hearing record is replete with testimony from personnel from the Register of Wills which establishes Respondent's recurring practice to file time sensitive documents months or years late, or in numerous spe-

cific instances, not at all. Respondent's shortfalls in this respect have been identified, at a minimum, in more than three dozen separate estate matters.

### Board Case 49, 2003 (Estate of Janice Reed)

26. The Estate of Janice O. Reed ("Reed") was opened on April 23, 2002. The will directed that the Respondent be named Executor of the Reed Estate ("Reed Estate"). The will directed that at the time of her death her real and personal property was to be sold and distributed to the Delaware Humane Society ("DHS"). On May 7, 2002, the Respondent released $10,000 to the DHS. On May 22, 2002, DHS contacted the Respondent regarding the personal property which included several antiques. In October 2002, the Respondent disbursed $100,000 to the DHS. In early 2003, the DHS received a check for $300,000. Thereafter, on seven or eight occasions, DHS's attorney requested the final disbursement of $15,000 which was not received until July 2003.

27. At his June 2003 audit Mr. McCullough was unable to find a ledger showing distribution of funds or a listing of inventory for the Reed Estate. Unopened bank statements for the Estate were found among Respondent's records. [T–33]. Raw data was basically put in file boxes by Respondent. According to the Register of Wills, as of November, 20043, no inventory of accounting had been filed. Nonetheless, Mr. McCullough confirmed the Respondent paid himself approximately $15,380.00 in legal fees. [T–33].

### IV. Standard of Proof

Allegations of professional misconduct set forth in the Office of Disciplinary Counsel's Petitions for Discipline must be proven by clear and convincing evidence. Rule 15, Disciplinary Procedure Rules.

### V. Discussion and Analysis

The evidence in this Hearing convinces the Board that Respondent is presently unfit to practice law. The Board finds clear and convincing evidence of violations set forth in the Petition for Discipline. The Board specifically finds that Respondent violated Delaware Rules of Professional Conduct 1.1 regarding competence; 1.3 regarding diligence and promptness; Rule 1.5 regarding the reasonableness and timing of attorney's fees; Rule 1.15 regarding maintaining books and records, certification to the Supreme Court and safekeeping of client's property; Rule 3.4(c) regarding a knowing violation of an Order of a State Tribunal; and Rule 8.4(c) and (d) regarding dishonesty and deceit. In support of these findings, the Panel heard testimony from seven (7) witnesses including Respondent. Also, the Panel reviewed substantial documentation relevant to Respondent's handling of individual estate matters as counsel as well as four specific audit reports from certified public accountants commissioned by the Lawyer's Fund for Client Protection. In the aggregate, the evidence of the cited violations is overwhelming.

As a point of departure, it is essential to acknowledge that Respondent was suspended from the practice of law by the Supreme Court of Delaware effective January 1, 1996. He was reinstated in March, 1998. The complete explanation for his 1996–1998 suspension is set forth in *In The Matter of Richard S. McCann*, 669 A.2d 49 (Del.1995). However, the Court's prior opinion reveals, *inter alia*, that Respondent acted without reasonable diligence and promptness, submitted falsified documents to a tribunal, and acted in a manner deemed "clearly unprofessional". With

this factual pretext, the Board concludes as follows on the 37 counts in the pending petition:

*Count I:* Rule 1.15(a) states that "funds of the lawyer that are reasonably sufficient to pay bank charges may be deposited [in the escrow account]; however, such amount may not exceed $500 and must be separately stated and accounted for...." By having in excess of $500 of Respondent's own funds in his escrow account, Respondent violated Rule 1.15(a)

*Count II:* Rule 1.15(b) states that "a lawyer shall promptly deliver to the client or third-person any funds or other property the client or third-person is entitled to receive." By failing to pay required payroll taxes in a timely matter, Respondent did not deliver funds to third-persons in violation of Rule 1.1.5(b).

*Count III:* Rule 1.15(d) sets for the detailed and specific requirements for the maintenance of attorney's books and records. By failing to maintain his books and records in manner required by Rule 1.1.5(d), from October 1999 through December, 2003, as outlined in Mr. Zukoff's and Mr. McCullough's reports, the Respondent violated Rule 1.15(d).

*Count IV:* Rule 8.4(b) states that it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." The annotations to Rule 8.4 provide that "criminal acts that reflect adversely on a lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects, as construed in these Rules, shall be deemed to include, but not be limited to the following: (1) willful failure to make and file Federal, state or city income tax returns or estimated income tax returns, or to pay such estimated tax or taxes or to

supply information in connection therewith at a time or times required by law or regulation; (2) willful attempt in any manner to evade any Federal, state or city income tax". By failing to pay state and Federal income taxes, resulting in liens being placed on his property by the Federal and State tax authorities, the Respondent violated 8.4(b). The Respondent's "after the bell" efforts to satisfy his outstanding tax obligations, while laudable, are viewed by the Board as "doing too little, too late" in the context of this disciplinary proceeding.

*Count V:* Rule 8.4(c) states that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation." By filing with the Delaware Supreme Court Certificates of Compliance for 2000, 2001 and 2002 which falsely represented that the Respondent's law practice books and records were maintained in compliance with Rule 1.15, the Respondent violated Rule 8.4(c).

*Count VI:* Rule 8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation". By filing with the Delaware Supreme Court Certificates of Compliance in years 1998, 1999, 2000, 2001, 2002, 2003, each of which contained representations to the Court that all of the Respondent's Federal and state income and payroll taxes had been filed and paid on a timely basis, the Respondent violated Rule 8.4(c).

*Count VII:* Rule 8.4(d) provides that it is "professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of Justice". The Delaware Supreme Court relies upon representations made by attorneys in the Certificates of Compliance filed with the Annual Registration statements. By filing with the Delaware Supreme Court Certificates of

Compliance for 2000, 2001 and 2002, each of which contained false representations to the Court relating to the Respondent's maintenance of his law office books and records, by filing with the Supreme Court Certificates of Compliance for years 1998, 1999, 2000, 2001, 2002, and 2003, each of which contained false representations that all of the Respondent's Federal and state income and payroll taxes had been filed and paid on a timely basis and by failing to file law practice employer and employee payroll taxes due to the Federal and state tax authorities for the 4th quarter of 2000 through the 4th quarter of 2003, the Respondent violated Rule 8.4(d).

*Count VIII:* Rule 1.1 requires that a "lawyer shall provide competent representation to a client." By failing to file the inventory for fourteen (14) years after the due date and by failing to file the accounting for more than fifteen (15) years after the due date, the Respondent did not probate the Sellers' estate competently in violation of Rule 1.1.

*Count IX:* Rule 1.3 requires that a "lawyer shall act with reasonable diligence and promptness in representing a client." By failing to file the inventory for 14 years after the due date and by failing to file the accounting for more than 15 years after the due date, the Respondent did not act with reasonable diligence and promptness in probating the Sellers estate in violation of Rule 1.3.

*Count X:* Rule 1.5(a) requires that "a lawyer's fee shall be reasonable." By charging $25,249 for his work on the Sellers Estate, which took him more than 15 years to complete, Respondent charged an unreasonable fee in violation of Rule 1.5(a).

*Count XI:* Rule 1.15(a) requires that a lawyer holding the property of clients or third persons shall identify and appropriately safeguard such property, and shall maintain complete records of such property for a period of 5 years after the completion of the events that they record. By allowing essential estate documents to lie in boxes, unsorted and without an appropriate accounting of the respective estate accounts, the Respondent failed to properly identify and safeguard the property of the Sellers Estate in violation of Rule 1.15(a).

*Count XII:* Rule 1.15(b) states that "a lawyer shall promptly deliver to the client or third persons any funds or other property that the client or third person is entitle to receive and upon request of the client or third person, shall promptly render a full accounting regarding such property." By failing to distribute the funds of the Sellers' estate to the beneficiaries for more than 8 years after the death of Edna Sellers, the Respondent violated Rule 1.15(b).

*Count XIII:* Rule 1.15(d) sets for the specific requirements for the maintenance of attorneys' books and records. By failing to maintain his books and records for more than 15 years and by having critical documents in unsorted boxes without an appropriate accounting of the accounts for the Sellers Estate, the Respondent violated Rule 1.15(d)

*Count XIV:* Rule 3.4(c) states that a lawyer shall not "knowingly disobey an obligation under the rules of the tribunal, except for an open refusal based on an assertion that no valid obligation exists." By failing to probate the Sellers Estate in a timely manner consistent with the applicable rules of the Court of Chancery, the Respondent violated Rule 3.4(c).

*Count XV:* Rule 3.4(c) states that a lawyer shall not knowingly disobey an obligation under the rules of the Tribunal except for an open refusal based on an assertion that no valid obligation exists.

Board on Professional Responsibility Rule 7(4) states that discipline may be imposed for a "violation of any discipline or disability rule or order." By failing to abide by the Supreme Court Order in *In The Matter of McCann,* 669 A.2d 49 (Del.1995), specifically by failing to arrange with another member of the Delaware bar to protect the interests and beneficiaries of the Sellers estate during the period of his suspension, the Respondent violated Rule 3.4(c) and Board Rule 7(4).

*Count XVI:* Rule 8.4(d) states that it is unprofessional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice. By failing to probate the Sellers Estate in a timely manner, Respondent violated Rule 8.4(d).

*Count XVII:* Rule 1.1 requires that a "lawyer shall provide competent representation to a client". By failing to file the inventory for 9 years after the due date and by failing to file the accounting for 8 years after the due date, Respondent did not probate the Geary Estate competently in violation of Rule 1.1.

*Count XVIII:* Rule 1.3 requires that a "lawyer shall act with reasonable diligence and promptness in representing a client." By failing to file the inventory for 9 years after the due date and by failing to file the accounting for 8 years after the due date, the Respondent did not act with reasonable diligence and promptness in probating the Geary Estate in violation of Rule 1.3.

*Count XIX:* Rule 1.5(a) requires that "a lawyer's fee shall be reasonable." By charging $25,000 for his work on the Geary Estate, where he failed to file the inventory or the accounting and where he was removed as personal representative by the Court of Chancery, the Respondent charged an unreasonable fee in violation in Rule 1.5(a).

*Count XX:* Rule 1.15(a) requires that a lawyer holding the property of clients or third persons shall identify and appropriately safeguard such property, and shall maintain complete records of such property for a period of 5 years after the completion of the events that they record. By failing to produce documents for Mr. McCullough's inspection and by failing to produce to Mr. Ferry the estate checkbook, checkbook register, bank statements from August 1995 through January 1996, and bank statements for February, March and June, 2000, the Respondent failed to properly identify and safeguard the property of the Geary Estate in violation of Rule 1.15(a).

*Count XXI:* Rule 1.15(b) states that "a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property." By failing to distribute the funds for more than 6 years to the First Church of Christian Scientists, the Respondent violated Rule 1.15(b).

*Count XXII:* Rule 1.15(d) sets forth detailed and specific requirements for the maintenance of attorneys' books and records. By failing to produce documents for Mr. McCullough's inspection and by failing to produce to Mr. Ferry the Geary estate checkbook, checkbook register, bank statements from August, 1995 through January, 1996, and bank statements for February, March and June 2000, the Respondent violated Rule 1.15(d).

*Count XXIII:* Rule 3.4(c) states that "a lawyer shall not knowingly disobey an obligation under the rules of a Tribunal except for an open refusal based on an assertion that no valid obligation exists." By failing to probate the Geary Estate for more than 8 years and by failing to attend the Court

of Chancery Hearing despite notice of the Hearing, the Respondent violated Rule 3.4(c).

*Count XXIV:* Rule 3.4(c) states that a "lawyer shall not knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists." Board on Professional Responsibility Rule 7(4) states that discipline may be imposed for a "violation of any discipline or disability rule or order." By failing to abide by the Supreme Court Order in *In The Matter of McCann*, 669 A.2d 49 (Del.1995), specifically by failing to arrange with another member of the bar to protect the interests of the beneficiaries of the Geary Estate; by failing to comply with Rule 23 of the Delaware Lawyers Rules of Disciplinary Procedure that requires an attorney suspended from the practice of law to notify all persons to who a fiduciary duty is or may be owed and that the attorney is disqualified to act as the attorney in the matter, based on the numerous contacts by the beneficiaries during the period of suspension, and by taking legal fees on four (4) separate occasions in 1996 during this period of suspension, the Respondent violated Rule 3.4(c) and Board Rule 7(4).

*Count XXV:* Rule 8.4(d) states that "it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice." By failing to probate the Geary Estate in a timely manner, the Respondent violated Rule 8.4(d).

*Count XXVI:* Rule 1.1 requires that a "lawyer shall provide competent representation to a client". By failing to file the inventories and/or accountings for several years on numerous estates, the Respondent did not probate a long list of miscellaneous estates competently in violation of Rule 1.1.

*Count XXVII:* Rule 1.3 requires that a "lawyer shall act with reasonable diligence and promptness in representing a client." By failing to file the inventories and/or accountings on a long list of miscellaneous estates for several years, the Respondent did not act with diligence and promptness in probating the miscellaneous estates in violation of Rule 1.3.

*Count XXVIII:* Rule 3.4(c) states that a "lawyer shall not knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists." By failing to probate the miscellaneous estates for several years consistent with the Rules of the Court of Chancery, the Respondent violated Rule 3.4(c).

*Count XXIX:* Rule 3.4(c) states that a "lawyer shall not knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists." Board on Professional Responsibility Rule 7(4) states that discipline may be imposed for a "violation of any discipline or disability rule or order." By failing to abide by the Supreme Court Order in *In The Matter of McCann*, 669 A.2d 49 (Del.1995), specifically by failing to arrange with another member of the bar to protect the interests of the beneficiaries of numerous miscellaneous estates, the Respondent violated Rule 3.4(c) and Board Rule 7(4).

*Count XXX:* Rule 8.4(d) states that "it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice." By failing to probate the miscellaneous estates in a timely manner, the Respondent violated Rule 8.4(d).

*Count XXXI:* Rule 1.1 requires that "a lawyer shall provide competent representation to a client". By failing to file the inventory in a timely manner and for failing to file the accounting in a timely man-

ner the Respondent did not probate the Reed estate competently in violation of Rule 1.1.

*Count XXXII:* Rule 1.3 requires that a "lawyer shall act with reasonable diligence and promptness in representing a client." By failing to file the inventory in a timely manner and by failing to file the accounting in a timely manner, the Respondent did not act with reasonable diligence and promptness in probating the Reed Estate in violation of Rule 1.3.

*Count XXXIII:* Rule 1.15(a) requires that a lawyer holding the property of clients or third persons shall identify and appropriately safeguard such property, and shall maintain complete records of such property for a period of 5 years after the completion of the events that they record. By failing to maintain a distribution ledger or a listing of inventory of assets in the Reed Estate, the Respondent failed to properly identify and safeguard the property of the Reed Estate in violation of Rule 1.15(a).

*Count XXXIV:* Rule 1.15(b) states that "a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property." By failing to distribute the funds in a timely manner to DHS, the Respondent violated Rule 1.15(b).

*Count XXXV:* Rule 1.15(d) sets forth detailed and specific requirements for the maintenance of attorneys' books and records. By failing to maintain a distribution ledger or a listing of inventory of the assets in the Reed Estate, the Respondent violated Rule 1.15(d).

*Count XXXVI:* Rule 3.4(c) states that a "lawyer shall not knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists." By failing to probate the Reed Estate in a timely manner, the Respondent violated Rule 3.4(c).

*Count XXXVII:* Rule 8.4(d) states that "it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice." By failing to probate the Reed estate in a timely manner, the Respondent violated Rule 8.4(d).

## VI. Conclusion and Recommended Sanctions

Case No. 2, 35, and 49, 2003 involve, in the aggregate, numerous and substantial violations of the Delaware Lawyers Rules of Professional Conduct. The Respondent's pattern of misconduct has been proven by clear and convincing evidence. The Board is particularly mindful that Respondent's recurring professional misconduct has spanned many years.

In considering the appropriate sanction, the Board looked to the four-factor test established by the ABA Standards for Imposing Lawyer Sanctions and recognized by the Delaware Supreme Court. [See *In Re Bailey,* 821 A.2d 851 (Del.2003) ]. The factors are the lawyer's mental state, the actual or potential injury caused to clients or parties resulting from misconduct, the nature of the ethical duties violated and review of any aggravating or mitigating circumstances.

### Aggravating Factors

The Board finds that the following aggravating factors exist in this Disciplinary matter: (1) Respondent has engaged in a pattern of misconduct involving thirty-seven (37) separate counts, including failing to satisfy basic financial obligations relating to the proper maintenance of law practice

books and records [ABA Standards for Imposing Lawyer Discipline ("ABA Standard") § 9.22(c)]; (2) filing numerous false Certificates of Compliance with the Delaware Supreme Court; (3) failing to abide by the Delaware Supreme Court Order in *In The Matter of McCann,* 669 A.2d 49 (Del.1995) by failing to arrange with another member of the bar to protect the interests of beneficiaries of estates and for taking attorney's fees during a period of suspension from the practice of law; (4) Respondent's failure to timely file and pay federal and state income tax obligations constitutes illegal conduct [ABA Standard § 9.22(k)]; (5) Respondent has substantial experience in the practice of law, having been admitted to the Delaware Bar in 1964; (6) Respondent's prior disciplinary record; and, (7) Respondent has failed to cooperate with the ODC [ABA Standard § 9.32(e)]. Indeed, his failure extends beyond the ODC insofar as Respondent failed to provide timely cooperation to the auditors from the Lawyers Fund for Client Protection. Respondent's lack of cooperation resulted in protraction of this Disciplinary proceeding, and, worse, delay in the remediation to clients adversely affected by Respondent's misconduct.

### Mitigating Factors

The Board acknowledges Respondent's obvious remorse. However, the Board rejects Respondent's unsupported claims that he: (1) acted with an absence of dishonest or selfish motives; (2) cooperated with the Office of Disciplinary Counsel; and, (3) that leniency is appropriate given the remoteness of time of the prior disciplinary offenses. Indeed, with the exception of Respondent's remorse, the Board views the Respondent's claims of mitigating factors to be without merit. As for Respondent's claim that he is of generally good character and reputation, aside from serious issues raised in this proceeding, the Board is aware of no evidence to the contrary.

### Board's Recommended Discipline

The Board on Professional Responsibility recommends a three (3) year suspension, with the ability to apply for reinstatement at any time after the expiration of the three (3) year suspension. Any reapplication *must* be based on a demonstration that Respondent has made arrangements to resume the practice of law in association with one or more attorneys or in a law firm, but in no case shall. Respondent have responsibility for the financial record keeping requirements imposed by Rule 1.15, and shall have no authority to issue checks from operating or escrow accounts. As grounds for this recommendation, the Board primarily relies upon the findings in *In re Sanders,* 498 A.2d 148 (Del.1985) (three-year suspension); *In re Sandbach,* 546 A.2d 345 (Del.1988) (three-year suspension); *In re Ayres,* 802 A.2d 266 (Del.2002) (included bookkeeping failure—three-year suspension); *In re Autman,* 798 A.2d 1042 (Table)(Del.2002) (included bookkeeping failures—three-year suspension); *In re Hiner,* 796 A.2d 654 (Table)(Del.2002) (included bookkeeping failures—three-year suspension); and, *In re Garrett,* 835 A.2d 514 (Del.2003) (three—year suspension). The Board also finds Respondent's case distinguishable from *In re: Brodoway,* 854 A.2d 1158 (Del. 2004) and *In re: Froelich,* 838 A.2d 1117 (Del.2003) in that Respondent did not take swift remedial efforts to rectify his misconduct nor has Respondent fully cooperated with the Office of Disciplinary Counsel. Moreover, both *Brodoway* and *Froelich* involved "carelessness" rather than the "systemic failure" and "knowing disregard" found in Respondent's misconduct.

In addition to the recommended sanction of a three (3) year suspension from

engaging in the practice of law as a member of the Delaware Bar, it is further recommended as follows:

1. That Respondent be reprimanded publicly;

2. That Respondent discharge his obligations under Rules 21 and 23 of the Delaware Rules of Disciplinary Procedure;

3. During his suspension, Respondent shall not share in any legal fees arising from clients or cases referred by Respondent during the period of suspension to any other attorney or share in any legal fees earned for services by others during such period of suspension;

4. That during his suspension, Respondent shall pay all of the ODC's costs in this proceeding, pay the costs of the Lawyer's Fund for Client Protection audits; and pay all past and current Federal and State income taxes, all past and current payroll tax obligations and repay to his clients all unearned fees;

5. That Respondent must fully cooperate with the ODC in its efforts to monitor his compliance with the suspension order and that if Respondent has complied with all of the other terms and conditions of this recommended sanction he may petition for reinstatement after three (3) years, based upon a demonstration that he has made arrangements to resume the practice of law in a public capacity or in a private law firm, but not as a solo practitioner and not in any office sharing arrangement that would amount to a solo practice, and in no case shall Respondent have responsibility for the financial record keeping requirements imposed by Rule 1.15, nor shall he have the authority to issues checks from operating or escrow accounts, which responsibility shall be assumed by one (1) or more of the other members in good standing of the Delaware Bar with whom Respondent has arranged to engage in the private practice of law.

6. As soon as possible, it is further recommended that the ODC file a petition in the Court of Chancery for the appointment of a receiver for Respondent's law practice.

Panel of the Board of Professional Responsibility

BY: /s/ Mark L. Reardon, Esquire, Chairman

BY: /s/ Clay T. Jester, Esquire

By: /s/ Donald Blakey Donald A. Blakey, Ph.D.

Dated: August 4, 2005

Panel of the Board of Professional Responsibility

BY: /s/ Mark L. Reardon Mark L. Reardon, Esquire, Chairman

BY: /s/ Clay T. Jester Clay T. Jester, Esquire

BY: /s/ Donald A. Blakey, Ph.D.

Dated: August 17, 2005